## Mary E. Dean et al. v. Charles H. Baldwin et al.

1. CORPORATIONS—*Payment for Shares of Stock.*—A resolution of the board of directors of a corporation to the effect that the company receive a formula for compounding dyes by a pretended process claimed by the discoverer to be known only to himself, in full payment for a large number of shares of stock, to be transferred to a third party, and for which such discoverer had paid nothing, is in law, if not in fact, a fraud on the company and on the stockholders who have paid in full for the shares held by them.

2. SAME—*Subscriptions for Stock, How to be Paid.*—The courts have inflexibly enforced the rule that payment of stock subscriptions is good as against creditors, only where the payment for such stock has been made in money or its equivalent.

3. SAME—*Liability of Stockholders, How Measured.*—As between a subscriber for stock or a stockholder and the corporation the market value of the stock is not an element affecting in any way the liability of the subscriber or stockholder to the corporation. Such liability is measured by the amount of the subscription for the stock at its par value, less any amount which has been paid upon it.

**Bill for Relief.**—Appeal from the Superior Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in this court at the March term, 1901. Reversed and remanded. Opinion filed January 30, 1902.

**Statement.**—November 21, 1900, appellants, Mary E. Dean and Francis S. Wilson, filed a bill against Charles H. Baldwin, George Gundling, Charles H. Sager, William Thompson and the Angel Dye Company, appellees. Charles H. Baldwin, Charles H. Sager and the Angel Dye Company demurred generally to the bill. The court sustained the demurrer, and appellants electing to stand by the bill, it was dismissed for want of equity. The following facts appear from the bill:

The organization of the Angel Dye Company was completed by the recording of a charter on April 14, 1899, the charter being issued by the secretary of state April 13, 1899. Prior to that time, about the month of November, 1898, one S. M. Angel claimed to be the discoverer and inventor of a new dye for household uses which was the result of great elaborate research by him and his wife, and

that the qualities were unknown to others and could only be produced by his formulæ. In pursuance of his claim and for the purpose of testing same, on the 1st day of December, 1898, said S. M. Angel, Charles H. Sager and Harriet E. Peerstone, trustee, entered into an agreement in writing, which is made Exhibit A to the bill, which provided for a trial of the dyes, and if the parties should agree to the formation of a corporation for the manufacture and sale of said dyes, provided after the trial the parties should so wish to do, it was provided that Angel was to receive a certain percentage of stock, and he in payment therefor was to transfer to the corporation his formulæ. Under this agreement the formulæ were placed in escrow, to be kept secret and only known to said Angel; that thereafter it was finally agreed that upon the formation of the corporation Angel was to receive fifty shares of the capital stock fully paid up for his formulæ. Some time thereafter, when it was decided to form a corporation, a license was procured from the secretary of state and books of subscription opened. Thereupon said S. M. Angel subscribed for fifty shares, for which he agreed to pay the sum of $5,000, such subscription reading as follows:

" We, the undersigned, hereby severally subscribe for the number of shares set opposite our respective names, to the capital stock of Angel Dainty Dye Company, and we severally agree to pay said company for each share the sum of one hundred dollars ($100).

" S. M. Angel...............50 shares........$5,000."

That aside from said contract of subscription no other contract or understanding, written or verbal, was ever entered into between said company and said Angel, either as to his formulæ, capital stock or his stock subscription, and no contract was made with said company that said Angel was to pay for said stock by the transfer to the corporation of the formulæ.

After the formation of the company said Angel commenced to work for it and to make in secret the household dyes which were sold by the company; that he received as full compensation for so doing a salary of $25 a week, which

was the largest salary paid by the company, and as alleged
in the bill, was greatly in excess of the value of his services
or of the formulæ to the company; that no contract was
ever entered into between said company and said Angel,
with reference to receiving his formulæ for the payment
of his subscription; still it was assumed or inferred by the
parties that the contract heretofore mentioned, entered
into between the parties some six months prior to the for-
mation of the company, would be carried out by Angel and
by the company, and acting on said assumption, when, on
the 23d day of September, 1899, a partial distribution of
stock was issued to the stockholders, to the amount that
they had made payments in cash, in order that there might
be no disagreement or discrimination, a certificate was
issued to said Angel for fifty shares of stock of said com-
pany, as fully paid up, although at the time said company
had received no compensation therefor, nor has the com-
pany ever received any compensation therefor, the said
formulæ during all said time remaining in escrow under
the original agreement entered into prior to the formation
of the company.

Upon the expiration of the time, under the original con-
tract, that the formulæ were to remain secret and in
escrow, said Angel, when called upon by the company to
turn over said formulæ, refused to do so, insisting that the
contract made prior to the formation of the company had
not been carried out by the parties thereto, but had been
broken by them, he claiming the contract was terminated
and no longer in existence; that, however, he was ready
and willing to sell the formulæ for a money consideration.
The company considered said matter at an end, and termi-
nated said employment of said Angel, and ceased all connec-
tion with said Angel, except that said Angel still retained
said stock, for which the company had received nothing,
and for which said Angel under his stock subscription had
agreed to pay $5,000. The company thereafter proceeded
to carry on its business and to manufacture the dyes with-
out the use or aid of the formulæ, and upon investigation
found that the dyes could be made without the use of the

Dean v. Baldwin.

formulæ, and that the alleged new discovery of said Angel was a myth, and that the properties and characteristics of his dyes and the means and ways to produce them were well known to the dye trade, and the company had no trouble in securing information, without expense or cost to it, from the large dye manufacturers, as to the methods and ways of manufacturing household and package dyes, containing all the properties and characteristics claimed by Angel for his dyes, and further found upon investigation that the alleged secret invention and discovery of said Angel was no invention or discovery whatever, and that there was no merit or validity to his claim, as the same were well known to the dye world; that the only skill or capacity the said Angel brought the business in the manufacture of the dyes, was his particular individual skill in selecting and testing dyes with reference to the production of particular shades and colors; that along said lines said Angel was an expert, by reason of the years of experience in the dyeing business, but that he had otherwise no other or greater information respecting dyes and their uses and properties, or as much, as many other men engaged in the dye business; that while the company did a fair business in the manufacture and sale of its dyes, the same, being a new product on the market, required a great deal of advertising and pushing, and an expenditure of a great deal of money, in consequence of which a large part of the capital stock of said company was used up; that thereafter, during the month of June, 1900, one George Gundling, who is made a party defendant to the bill, sought to purchase the Angel Dainty Dye Company, or a controlling interest therein; that said Gundling had numerous interviews with the stockholders of said company and with the officers thereof, and came in touch with and negotiated with said Angel, with reference to the purchase of his formulæ and the turning over of certificates of stock held by him; that the said Gundling at the time investigated the affairs of the said company and became acquainted with all the matters herein set forth, and of the

exact status of all the affairs of the said company, and
especially with reference to the dealings between said
Angel and the company, and the contract made prior to the
formation of said company by said Angel, and the parties
hereinbefore mentioned; that at that time said Gundling
stated that he had made an agreement with said Angel to
purchase his said formulæ for the sum of $300; that said
Gundling, some time after he had been carrying on the
investigation, called in as his counsel one Charles H. Bald-
win, also made party defendant to the bill; that said Bald-
win acquainted himself with the various matters hereinabove
referred to, and read over and investigated said written
contract hereinbefore set forth, entered into between said
Angel and said Sager and Peerstone, and became and was
acquainted with all the various proceedings with reference
to said matters hereinbefore set forth; that thereafter, and
some time during the month of September, 1900, the said
Gundling became the owner of seventy shares of stock
theretofore held by said Sager, and thereafter, on the first
day of October, the said Baldwin, either as the representa-
tive of said Gundling, or in his own behalf, purchased from
the said Angel his said formulæ and paid therefor the sum
of $300. At the same time said Angel transferred to said
Baldwin his said certificate for fifty shares of the capital
stock; that said Baldwin surrendered said certificate to the
company and received a new certificate in his own name;
that during the meantime, said Angel had resigned from
the position of director of said company and said Gundling
was elected to fill the vacancy. The board of directors
then consisted of said Sager, Gundling and one Thompson.
That on the 17th day of October, 1900, a meeting of the
board of directors of the company was held and at said
meeting said Gundling and Sager, constituting a majority
of said board, passed a resolution whereby, in substance, it
set forth and declared that the said Angel Dainty Dye
Company receive from said Baldwin the said formulæ for
the manufacture of dyes, as full and complete payment for
the said fifty shares of the stock so held by said Baldwin,

and that transfer of said formulæ to said company should constitute a full payment by said Baldwin of the subscription to the capital stock made by said Angel; that said resolution was passed under protest and objection of said Thompson, the other director of the company; that the said action of the board of directors was done by them with a full knowledge of all the conditions and matters hereinbefore set forth, and, as alleged, was in violation of the rights and interests of the complainants as stockholders in said company, and was done for the purpose of prejudicing the rights and interests of said complainants as stockholders of said company; that the said company was indebted in about the sum of $1,000; that all of the stock of said company other than the said fifty shares, had been fully paid up, and that therefore the only source, practically, from which said debts could be paid would be from said stock so held by said Baldwin; that all the said facts were well known to the directors of said company, and that the said resolution was passed by the said directors for the purpose of relieving the said Baldwin from the money justly due from him on his stock, and with the knowledge by the said directors that the said formulæ had been purchased for a much less sum than $5,000, to wit, for the sum of $300, and with the further knowledge by the said board, that the said formulæ and the use thereof in the manufacture of the dyes by said company were not necessary in the proper conduct and carrying on of the said business, and were not worth the said sum of $5,000, or anywhere near that amount.

The bill prays for a rescission of the resolution passed by the board of directors October 17, 1900, and for an injunction against receiving the formulæ mentioned in the bill in payment of the stock issued to Baldwin, etc.

William Prentiss, attorney for appellants.

No appearance by appellees.

Mr. Justice Adams delivered the opinion of the court.
It sufficiently appears from the bill that the pretended

discovery and invention of Angel was no discovery; that
what he claimed to have invented and discovered was well
known to dye manufacturers before he claimed to have dis-
covered or invented it; that he refused to turn over to the
dye company the formulæ for his alleged discovery, as he
had agreed with the promoters, namely, in payment of
stock for which he had subscribed, and which was issued to
him and for which he paid nothing.  It also appears that
Baldwin, Gundling's attorney, being acquainted with the
status of matters as between Angel and the dye company,
and knowing that Angel had paid nothing for the stock,
purchased from Angel the useless formulæ for the sum of
$300, and that, thereupon, Angel transferred the fifty
shares of stock of the nominal or par value of $5,000 to
Baldwin.  So far the dye company had received nothing
for the Angel stock so transferred.  It would seem, from
the facts stated in the bill, that while Baldwin was the
nominal purchaser of the formulæ from Angel, and the
assignee of the Angel stock, he, in fact, made the purchase
for Gundling, and took the assignment of the stock for
him, although in his, Baldwin's, name.  Gundling, as the
bill avers, had, previous to the alleged purchase by Baldwin,
informed stockholders and officers of the dye company that
he, Gundling, had made an agreement with Angel to pur-
chase his formulæ for the sum of $300.  The bill avers that
Gundling was acquainted with the affairs of the company,
and especially with the dealings between Angel and the
company.  All of the stock of the company was fully paid
for, except the Angel stock.  The bill avers that the form-
ulæ were not worth nearly $5,000, and substantially that
they were valueless, and the very fact that the owner of
the formulæ, who, as the bill avers, was an expert in the
dyeing business, and who, therefore, must have been well
acquainted with the value of the formulæ, sold them for
$300, is evidence that they were not worth more than that
sum, to say the least.  In view of these facts, the resolu-
tion of the board of directors passed October 17, 1900, to
the effect that the company should receive the formulæ in

Dean v. Baldwin.

full payment of the Angel stock, transferred to Baldwin, and for which Angel had paid nothing, was, in law, if not in fact, a fraud on the company and on the stockholders, who had paid in full for their stock.   It was a fraud as to the corporation, because, if effective, it deprives it of a large amount of the capital on which it must rely for the carrying on of its business and the payment of its debts.   It was also a fraud on other stockholders or subscribers for stock. Melvin v. Lamar Ins. Co., 80 Ill. 446.

In that case there was a subscription for 5,500 shares of stock, but there was a private arrangement between the subscribers and the company, by which the subscribers might, subsequently, surrender their shares and withdraw from the company all money paid by them.   The court held this arrangement invalid, saying:

"All subscriptions are presumably upon the same basis, and all shares entitled to the same benefits and subject to the same burdens.   In the subscription of each person every other subscriber has a direct interest.   There purported here to have been a large amount of stock taken, whereas, in fact, there was really no stock taken—the issue of the shares to Cushman and Hardin being coupled with the right on their part to surrender them and take back their money.   Such a private arrangement with an individual subscriber, although it may not be intended, is, in law, a fraud upon the other subscribers, and such agreement will be disregarded, and the party be held bound to all the responsibilities of a *bona fide* subscriber.   This is the doctrine, as we regard, abundantly established by judicial decisions."   Ib. 456–7.

In the present case the subscription for the Angel stock was absolute and unconditional, and the corporation could not legally receive in payment of the stock anything except money to the amount of its face value or property which the corporation might lawfully possess and use, and of value equal to the face value of the stock, at a fair estimate. Coleman v. Howe, 154 Ill. 458; Sprague v. Nat. Bank of America, 172 Ib. 149; Nat. Bk. of America v. Pac. Ry. Co., 66 Ill. App. 320.

In Coleman v. Howe, *supra,* the court say:

" But if the property contributed is not valued in good faith, the shares of stock will not be fully paid up, either in law or fact, by the contribution of such property. A declaration by the corporation that the shares are paid up will not avail against the creditors in case of insolvency. (2 Morawetz on Priv. Corp., Sec. 825.) 'The courts have inflexibly enforced the rule, that payment of stock subscriptions is good as against creditors only where payment has been made in money, or what may be fairly considered as money's worth.' (Wetherbee v. Baker, 35 N. J. Eq. 501.)"

In 2 Morawetz on Priv. Corp., Sec. 825, this language is used:

" A contribution of property or services by a shareholder would undoubtedly discharge his obligation to creditors, in respect of the amount of capital to be contributed by him to the extent of the value of the property or services; and if the property or services so contributed were valued by the agents of the corporation, in good faith, at a certain sum, creditors would be bound thereby, though the valuation may prove to be excessive. However, if property or services contributed by a shareholder to pay up his shares were not valued in good faith at the amount of capital to be contributed in respect to the shares, they would not be fully paid up by such contribution, either in fact or in law."

It is clearly contemplated by the general incorporation law, that subscriptions for stock shall be in good faith and for the par value of the stock. Statutes, C. 32, Sec. 7.

As between a subscriber for stock, or a stockholder, and the corporation, the market value of the stock is not an element affecting in any way the liability of the subscriber or stockholder to the corporation. The liability of a stockholder is measured by the amount of the subscription for the stock, at its par value, less any amount which has been paid on it. This is illustrated by numerous decisions. 1 Morawetz on Corporations, 2d Ed., Sec. 56.

The amount of the subscription for the Angel stock was $5,000, namely, fifty shares of the par value of $100 each. Baldwin, the assignee of the shares, with full notice that they were not paid for, stands in Angel's shoes, or Gundling, if he is the real owner of the shares, is in like position.

The facts averred in the bill show that the resolution of October 17, 1900, was passed by the vote of two directors, Gundling and Sager, the only other director, Thompson, protesting. The wrong-doing directors being a majority of the board of directors, the rule is that stockholders may file a bill. Bruschke v. Chicago S. Verein, 145 Ill. 433, 445.

It was error to sustain the demurrer and dismiss the bill, and the decree will be reversed and the cause remanded.