OLIVE M. COFFIN, Extrx., Appellant, v. A. D. STRUTHERS,
Appellee.

**CONTRACTS:** Consideration—Failure of—Issuance of Stock Shares
—Cancellation. Entire failure of consideration for a contract
authorizes an entire cancellation of the contract.

PRINCIPLE APPLIED: Stock of a corporation engaged in
the sale of lightning rods was issued to a promoter of an in-
surance company, under an agreement that the insurance com-
pany would grant a 25 per cent discount on premiums on all
buildings rodded with the lightning rods of corporation issuing
the stock. The insurance company failed before it carried out
any part of its contract. In the meantime the promoter to
whom the stock was issued deposited the stock with one of the
stockholders of the issuing corporation as collateral security to a
loan. The failure of consideration appearing, the collateral
holder surrendered the stock to his company and it was cancelled.
*Held,* the cancellation was justified and the promoter had no claim
thereto.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN,
Judge.

WEDNESDAY, MARCH 10, 1915.

SUIT to redeem certain shares of corporate stock alleged
to have been held by defendant as collateral security for a
loan; for an accounting and for judgment for the value of
the stock in the event it could not be returned to the plaintiff.
Defendant alleged that he at one time held the stock as col-
lateral to a loan; that the stock was never paid for, that the
consideration for the purchase thereof failed, and that said
stock was surrendered and cancelled. On these issues the case
was tried to the court, resulting in a decree dismissing the
petition, and plaintiff appeals.—*Affirmed.*

*Ryan & Ryan* and *E. J. Clements,* for appellant.

*Clark, Byers & Hutchinson,* for appellee.

DEEMER, C. J.—Prior to the year 1905, Dodd and Struthers was a corporation engaged in the manufacture and sale of lightning rods, with its principal place of business at Des Moines, Iowa, but doing a business in many states of the middle west. The stock of this corporation was held in equal amounts by West Dodd and A. D. Struthers, and save for its existence as a corporation, the business was carried on very much as if it were a partnership.

E. M. Coffin, now deceased, was an insurance man living in Omaha, Nebraska, and he with one Lynch organized an insurance company known as the National Mutual Fire Insurance Company of Omaha, Nebraska, Coffin being the president and manager, and Lynch the secretary. This company had been in business but a short time when Coffin and Struthers met, and had some negotiations looking to an arrangement whereby the insurance company would give a 25% discount on its insurance rates upon all property which was rodded with lightning rods made and sold by Dodd & Struthers. This agreement was to apply especially to all property located in the state of Iowa, although it also covered property located wherever Dodd & Struthers were selling their rods. At that time the insurance company had not secured the right to do business in Iowa or in many, if any, other states aside from Nebraska; and Coffin and Lynch undertook to procure the right to do business in Iowa and other states so as to be permitted to insure property therein.

In consideration of these promises, Struthers agreed to assign or to have issued to Coffin and Lynch certain shares of stock in the Dodd & Struthers corporation. In accord with this agreement, there was issued to E. M. Coffin, common stock in the Dodd & Struthers company to the amount of $2,500.00, and preferred stock to the amount of $5,000.00. This stock was issued in November of the year 1905, in two certificates— one for 50 shares of preferred stock, No. 300, and the other for five shares of common, No. 101, the only consideration for this stock being the agreements hitherto mentioned. Each of

these shares was assigned on the back thereof by E. M. Coffin to A. D. Struthers on July 29, 1907, and by Struthers, assigned without date to West Dodd. These shares appeared in the stock book of Dodd & Struthers and were each marked "Cancelled" in red ink across the face thereof.

Sometime in the year 1906 defendant, Struthers, purchased of the National Mutual Fire Insurance Company, a guaranty fund certificate of said company to the amount of $3,500.00 in cash and at the same time the following agreement was entered into:

"Agreement between A. D. Struthers of Des Moines, Iowa, and the National Mutual Fire Insurance Company of Omaha, Nebraska; said Struthers has this day bought of National Mutual Fire Insurance Company, three thousand five hundred par value Guaranty Fund Certificate of said company, and pays in therefor $3,500.00 in cash. It is therefore understood and agreed that said A. D. Struthers shall and will sell said certificate back to said company or assign it to whoever said company shall direct at any time on or before July 1, 1906; that said company shall pay to him in consideration therefor, the sum of thirty-six hundred and seventy-five ($3,675) dollars, together with five per cent running interest on said thirty-five hundred dollars from this date to the date of its redemption, which they shall pay on or before July 1, 1906.

"Witness our hand this 22nd day of January, 1906.

"A. D. Struthers,
"National Mutual Fire Ins. Co.
"E. M. Coffin, President,
"J. L. Mabie, Secretary."

In lead pencil opposite the above signatures there is this writing: "Extended to November 1, 1907, at which time we agree to personally see this matter settled in full. . . ."

Coffin personally guaranteed that he would take up the certificates mentioned in this agreement. Dodd & Struthers

also invested something like $2,000.00 more in the stock or guarantee fund of the insurance company, but this investment does not figure in the case.

In January of the year 1907, Coffin, who was then engaged in building a residence in Omaha, found that the building was costing more than he expected, and he applied to Struthers for a loan of $3,000.00 with which to complete the building; proposing to pledge as security the stock which had been issued to him in the Dodd & Struthers corporation; and after some correspondence, Struthers finally made Coffin the loan, taking his note therefor, and Coffin assigned the stock to Struthers as security for the note.

The insurance company was unable to secure the consent of the proper authorities to do business in Iowa and in the other states contemplated by the parties, and in the fall of 1907, it got into financial difficulty and was finally closed up and prohibited from doing business in Nebraska or any other state. The Dodd & Struthers corporation never received any benefit whatever from the agreement of the insurance company to discount its premium rates and can never secure such benefits for the reason that the insurance company failed and never complied with its agreement and never took up the guaranty as it promised. Discovering this situation, Dodd & Struthers cancelled the stock, and in effect converted it into treasury stock.

Struthers at this time also became apprehensive about the security for his $3,000.00 loan to Coffin, and he procured an attorney to go to Omaha to get additional security for the loan. This attorney went to Coffin and after considerable negotiations, both by the attorney and by Struthers himself with Coffin, Coffin finally made a demand note for $3,000.00 and also a second or third mortgage upon his Omaha dwelling house to secure the note. The mortgages upon the house were foreclosed and as a result, Struthers received $2,000.00 from the foreclosure sale, which amount he credited on Coffin's $3,000.00 note. When Struthers' attorney met Coffin in

Omaha, he, Coffin, said to the attorney, that the Dodd & Struthers' stock was sufficient security for the $3,000.00; but the attorney then and there said that the consideration for the stock had entirely failed, and that the stock had been cancelled and was no longer available as security. Coffin said in response that he was sorry that he and Lynch had been unable to carry out their agreement, and that they were unable to do so, although they acted in good faith; that they could not get into the state of Iowa and had been unable to carry out the agreement. The attorney was demanding the additional security for the $3,000.00 because the stock had not been made good and Coffin finally acceded to the demand, and gave the security. Coffin also said to the attorney:

"He said he had had at one time $7,500.00 worth of stock in Dodd & Struthers, Incorporated, which had been returned to them and which he had been able to give no satisfactory consideration for because of the failure of the company and because of his being unable to carry out the obligations of that company to do business in the State of Iowa and elsewhere where Dodd & Struthers were operating. He told me he wished he could have held that stock because he wanted to be associated with Dodd & Struthers in the future, thinking he might possibly have need of some employment on account of the failure of the insurance company. I stated that he said he was sorry or regretted that they were unable to carry out the agreement—same agreement they had in regard to a reduction of premium on insurance. He told me the company was in the hands of a receiver and was not doing any business."

Lynch, who, as we understand it, also received the same amount of stock in the Dodd & Struthers corporation as Coffin, afterward returned his stock to the company and it was cancelled.

The transactions with reference to the new security for the $3,000.00 loan were begun by the attorney sometime in the

summer or fall of the year 1907, and concluded early in January of the year of 1908. Nothing further was done by Coffin with reference to this stock in the Dodd & Struthers company during his lifetime (he having died on Oct. 2, 1908); but sometime in the month of September, 1909, Mrs. Coffin, having been appointed executrix of her husband's estate, through her attorney went to Struthers, tendered the balance due on the $3,000.00 note, and demanded the two certificates of stock. This demand was refused.

In the meantime, however, Struthers sold his stock and interest in the company of Dodd & Struthers to Dodd, and made an assignment of the stock issued to Coffin which had by him been endorsed to Struthers. This was done, so Struthers said, to convey the apparent legal title thereto to Dodd; the stock being in fact treasury or company stock. It is claimed that sometime in November or December of the year 1907, Coffin wrote Struthers the following letter:

"(Printed Headline 'E. M. Coffin, Omaha, Nebraska,' December 13, 1907.)    Mr. Struthers:

"Have been ill for three or four days. Am confined to my room but doctor don't know I am writing you. Nearly all your comments in recent letter are unjust and erroneously stated by you concerning which I will write you soon as get on my feet. The home is new, completed within last ten months. For the lot (214) feet front building house and out buildings by day labor, I paid in spot cash from July, 1906, to September, 1907, $24,460.00. Said figures do not include any raise in value of lot and two or three other things not counted. It is mortgaged for $9,800.00. No lien for building. Everything paid for in cash. It would seem to me that if I pay up the interest on your money that the $5,000.00 preferred and $2,500.00 common stock total $7,500 from all statements made to me when I took it ought to be good security for $3,000.00 on an extension, but as I said, will give additional security on the home. My intention is to sell the home

at once and build less expensive property and pay up everything I owe. Have today placed it on the market but whether can get my asking price of $24,500.00 before spring opens up, cannot tell so the note better be made on or before July 1, 1908; then just as soon as I sell before that time will pay it up. Your letter is the only unkind comment I have received during the past business difficulty but will not digress in this letter as I am not able to prolong it. Shall I draw the note and mortgage and send it? Thanking you in advance for this necessary considerate treatment I am, Very truly yours.

"E. M. Coffin, C. R. C."

The receipt of this letter is emphatically denied by Struthers and there is a decided conflict in the testimony regarding what was said in an interview between a son of E. M. Coffin and Struthers, had in Des Moines in November of the year 1908, and also as to what occurred at an interview between plaintiff's counsel and Struthers in the month of September in the year 1909. We shall not set forth the testimony of the witnesses. Suffice it to say that the matter of giving the security mortgage on Coffin's house for the $3,000.00 note was closed sometime after the letter just quoted is said to have been written,—whether before or after the interview between defendant's attorney and Coffin at Omaha, is a matter of considerable doubt. We are disposed to think, however, that if written at all it was after the Omaha interview. This conclusion seems inevitable from the other correspondence. Plaintiff's contention is that defendant held and still holds the two certificates of stock as security for the balance due on the $3,000.00 note, and for nothing else, and that having tendered the amount due on this note, she is entitled to a return of the stock; or in the event it cannot be returned, that she have judgment against the defendant for the face value thereof less the amount for which it is held as security.

1. CONTRACTS: consideration: failure of: issuance of stock shares: cancellation.

On the other hand, defendant says that the consideration

for the stock failed; that the said stock was surrendered and cancelled to the Dodd & Struthers company; that while the stock was at one time held as security for the $3,000.00 loan, it became worthless because the consideration therefor had failed, and that Coffin, recognizing this fact, gave the mortgage on his dwelling house as a substitute therefor, thus recognizing defendant's claim that the stock in the Dodd & Struthers company had been cancelled. While the arguments cover a wide field, the issues made by the pleadings are quite narrow, and resolve themselves down to a simple question of fact: Was there an entire failure of consideration for the Dodd & Struthers stock? and if so, was the said stock cancelled by agreement of the parties? or if not so cancelled, is defendant in equity entitled to have a decree of cancellation because of want or failure of consideration?

The only consideration for the issuance of the stock has already been stated and it is apparent that as a matter of fact, Dodd & Struthers never received any benefit therefrom. The insurance company was never authorized to do business in any state other than Nebraska, and as Coffin and Lynch knew, Dodd & Struthers had already sold that territory to another, and could not receive any advantage from discounts of insurance premiums in that state. The company never secured permission to do business in Iowa or other states where it would have been of advantage to Dodd & Struthers to have had the discount made in premium rates, and they received no benefit whatever from the Coffin promise and agreement. Both Lynch and Coffin recognized these facts, and Lynch surrendered his stock. Whether or not Coffin did so expressly is a matter of much doubt under this record, for he was endeavoring as best he could to hold on to the stock to the end; but he finally acceded to Struthers' demands bottomed on the idea that the stock was worthless, or had been cancelled, and gave the mortgage upon his dwelling house—impliedly recognizing the correctness of Struthers' claim. Aside from this, however, the case is in equity, and if the

defendant had the right of cancellation for failure of consideration, it matters not that the cancellation was not made with Coffin's consent. A court of Chancery will treat the cancellation as having been properly made, if in equity and good conscience there was reason for such cancellation.

A recitation of the facts is all that is necessary to demonstrate the equities of the case. To our minds, they justify the decree of the district court. We do not overlook the conflict in the testimony regarding what occurred between plaintiff's attorney and the defendant after the death of Coffin. About all that can be said of this is that someone is mistaken as to what took place. The trial court had the witnesses before it, and in effect found that there was nothing in this testimony which would justify a finding that the stock had not been cancelled or that defendant had no right in equity to treat it as cancelled. We are not justified in view of the entire record in coming to a contrary conclusion.

Appellant's motion to strike appellee's abstract is overruled. The decree must therefore be, and it is—*Affirmed.*

EVANS, LADD and GAYNOR, JJ., concur.