Bill to cancel shares of capital stock. The cause was before the Chancellor on another occasion (14 Del. Ch. 427, 129 A. 775) upon a motion to dismiss the bill. The shares in question were issued by the Bankers' Mortgage Company to Alfred Sohland and Dora Sohland, his wife. Bankers' Mortgage Company was incorporated April 5, 1922.
Briefly stated, the material facts are that Alfred Sohland was the owner of a controlling stock interest (63 per cent.) in a concern known as the Harrisburg Foundry Machine Works. He contracted to sell this stock interest to another concern, the Harrisburg Corporation, a corporation of this state one of the defendants herein. The Foundry Machine stock was never transferred to the name of the Harrisburg Corporation. Sohland was president of the Harrisburg Corporation.
On June 16, 1922, the minutes of the meeting of the board of directors of the Bankers' Mortgage Company show the following offer to the Bankers' Mortgage Company by the Harrisburg Corporation:
"To the Bankers' Mortgage Company:
"We hereby make application to your company for a loan in the sum of $125,000. We will agree to pay 6 per cent. interest per annum for such term as may be mutually agreed upon. We offer you the corporation note with collateral security as follows: 63 per cent. of the common or voting stock of the Harrisburg Foundry Machine Works. The strong financial condition of this company which has been in operation in Harrisburg for many years is well known.
"We are submitting herewith, for your consideration, a financial statement of the Harrisburg Foundry Machine Works.
"The Harrisburg Corporation, looking toward liquidation of this loan, will agree to hold in its treasury of its 6½ per cent. debenture bonds, a sufficient amount that, with proper deductions for commissions, etc., will net the amount of the said loan, these debenture bonds to be delivered to your company and sold by you and the proceeds used for the liquidation of the said note, at such time or times and in such proportions as you may direct.
"Requesting your favorable action upon this application, we are,
"Sincerely yours,
"The Harrisburg Corporation, "Per Howard M. Binghaman, Counsel."
Action on this offer was taken in the following form:
"The chairman further stated that he had made inquiries as to the reputation and financial standing of the directors and officers of the Harrisburg Corporation, that he had visited and inspected the property of the Harrisburg Foundry Machine Works, and that he had examined their financial statement, all of which proved satisfactory.
"On motion of N. B. Skinner, seconded by A. E. Kimmel, it was unanimously resolved that the application of the Harrisburg Corporation be accepted, and that they be notified that the loan would be negotiated upon the terms suggested, as soon as the financial condition of the Bankers' Mortgage Company would, in the opinion of its directors, justify investment."
At the same meeting the minutes further show the following announcement by Paul F. Skinner, the then president of the Bankers' Mortgage Company:
"The chairman further reported that, since the last meeting of the stockholders and directors of the company, he had been in conference with a number of reputable business men in Harrisburg and vicinity, looking toward their *Page 699 
becoming identified with the management of the company, and suggested that these gentlemen be at this time called into conference. This meeting with the approval of the directors, a recess was declared for the purpose stated."
Following this announcement, the minutes show a reconvening after recess of the board, the resignation of Paul F. Skinner and the other two directors (being the entire board), the election of Sohland, Coble and Webbert to the vacancies in the board thus created, and the election of Sohland as president, of Webbert as treasurer, and of Coble as secretary.
On June 14, 1922, membership of the board of directors was increased to five. Two new members, Kines and Nisely, were then elected, and Miller was chosen to fill the vacancy created by the resignation of Webbert as director and secretary.
On August 2, 1922, the board was again enlarged by the election of six additional members — Greybill, Bricker, Barker, Wildermuth, Allen and Becht.
The minutes of said meeting of August 2 disclose the following action taken which lies at the foundation of the present suit:
"Reference was made to action in a meeting of the board of directors held June 16, 1922, at which time an application was granted to the Harrisburg Corporation for a loan in the sum of $125,000.00 duly recorded on pages 43 and 44 hereof, with the further provision that the loan be made by the issuance of stock in the Bankers' Mortgage Company in the amount and number of shares required. The motion was unanimously agreed to.
"Mr. Wildermuth moved, seconded by Mr. B. F. Barker, that the executive committee be and is hereby authorized to make the abovementioned loan to the Harrisburg Corporation."
On August 14 following, the Harrisburg Corporation gave its note for $125,000 to the Bankers' Mortgage Company, together with the shares of stock of the Harrisburg Foundry Machine Works as collateral, the certificate evidencing said shares being in the name of Alfred Sohland. Thereupon the Bankers' Mortgage Company drew its check for $125,000 to the order of the Harrisburg Corporation. At the time this check was delivered, the Bankers' Mortgage Company had only $1,220.48 to its credit in the trust company upon which the cheek was drawn.
As a part of this same transaction, the Harrisburg Corporation subscribed for $150,000 of the capital stock of Bankers' Mortgage Company. In addition to the $150,000 which it needed to pay on its stock subscription, the Harrisburg Corporation also was under agreement to pay to the Bankers' Mortgage Company $12,500 as bonus and advanced interest on its loan. It therefore had a total obligation to the Bankers' Mortgage Company of $162,500. It paid this amount by two checks drawn on the same trust company upon which the Bankers' Mortgage Company had drawn its check covering the loan. The first check was for $150,000, and the second one for $12,500. At the time it had only $4,190.72 on deposit in the trust company, on which the two checks were drawn. The Bankers' Mortgage Company's check for $125,000 covering the loan was insufficient by $37,500 to meet the two checks of the Harrisburg Corporation, totaling, as stated, $162,500. But this deficiency was provided for by another check of the Bankers' Mortgage Company for $37,500, which was drawn to the order of one Webbert, a stock salesman, as representing commission on the sale of the $150,000 of Bankers' Mortgage Company's stock going to. the Harrisburg Corporation. This check to Webbert was indorsed by Webbert and stamped "For deposit only" in Security Trust Company of Harrisburg (the trust company hereinbefore referred to) to the credit of the Harrisburg Corporation. This deposited check, together with the one to the Harrisburg Corporation from the Bankers' Mortgage Company for $125,000, brought the former's deposit in the trust company up to an amount equal to the amount of its two checks before referred to, viz. $162,500.
The next step in the transaction was for the Bankers' Mortgage Company to issue the $150,000 of its stock subscribed for by the Harrisburg Corporation. But the stock was not issued to that corporation. It gave instructions to issue the stock, and it was so issued, as follows: 7,750 shares of preferred stock and 9,000 shares of common stock to Alfred Sohland, and 5,000 shares of preferred stock to Dora, his wife. The preferred stock had a par of $10 and the common was of no par value. The preferred was issued at its par of $10; and the common, according to Sohland, at $2.50 per share for the entire 9,000 shares, but according to the complainant and his witnesses at $5 per share for 4,- 500 shares thereof with 4,500 shares thrown in as a bonus.
Thus, at the end of these transactions, the Bankers' Mortgage Company came out holding the note of the Harrisburg Corporation for $125,000 secured by 63 per cent. of the stock of the Harrisburg Foundry Machine Works (3,604 shares of common and 2,760 shares of second preferred), registered in Sohland's name, and Sohland and his wife held stock of the Bankers' Mortgage Company valued by the parties at $150,000. The Harrisburg Corporation owed the note of $125,000 and had nothing except a right against Sohland to demand that the Harrisburg Foundry Machine Works stock deposited as collateral should be transferred to it in case the note were paid off, a right which may or may not be sustainable according as the claim of Sohland to be a creditor *Page 700 
of the Harrisburg Corporation in a large amount might be established or not.
It is the Bankers' Mortgage Company's stock issued to Alfred Sohland and Dora Sohland under the above circumstances which the pending bill seeks to have canceled as fraudulently issued.
Alfred Sohland admits the circumstances as above related of the issuance of the stock, but denies all fraud or illegality in connection with the same.
Samuel Fishman has intervened in the cause and filed an answer, claiming to be a bona fide purchaser for value and without notice of a portion of the shares issued in the manner above stated.
The answer of Dora Sohland avers that she had advanced $50,000 to her husband prior to the receipt of the shares received by her as above set out, that the stock so received by her represented an investment by her of her own funds, and that she was a purchaser in entire good faith for value and without notice.
The cause was heard on bill, answers, testimony of witnesses taken before an examiner and commissioner, and exhibits.
The evidence adduced in this cause is very voluminous and the exhibits numerous. I shall not burden this opinion with a detailed discussion of the evidence and exhibits, with the view of showing the arguments by which my conclusions upon the facts are arrived at. It will be sufficient simply to state the fact findings upon which the decree entered will as a matter of law be based. These findings are:
That Sohland was not only president of the Harrisburg Corporation and the Bankers' Mortgage Company, but he also succeeded in dominating the corporate control of both corporations.
That the stock of the Bankers' Mortgage Company, sought by bill to be canceled, was issued in consideration of the promissory note of the Harrisburg Corporation, the subscriber, secured by shares of stock of the Harrisburg Foundry Machine Works deposited as collateral. That the note of the Harrisburg Corporation was worthless, and the Harrisburg Foundry Machine Works stock was, if not entirely worthless for collateral purposes, at all events extravagantly and grossly overvalued as a fair and adequate security for the note, and that Sohland, who in reality negotiated the deal, had no reasonable ground to believe otherwise.
That the loan transaction and the payment for the stock were fictitious, simply a paper affair, showing plausibly on the books, but at the bottom being nothing more than what in the parlance of the street, is known as a "kiting" of checks, accompanied by a worthless note, with grossly insufficient collateral.
That the whole transaction was simply a scheme on the part of Sohland to unload his Harrisburg Foundry Machine Works stock in exchange for stock of the Bankers' Mortgage Company; he, through the corporations in his control, using them to effectuate his purpose.
These being the facts, what is the significance which the law attaches to them? Two considerations appear as suggesting the propriety of the relief which the bill seeks. These will now be noticed.
First. Was the promissory note of the Harrisburg Corporation, secured as it was by the collateral referred to, a lawful consideration for the stock? In answering this question, the feature of the collateral accompanying the note may be disregarded for the reason that under the finding of fact as to the collateral's value it was worthless. The case in this aspect of it therefore presents the question of whether the bare promissory note of the subscriber to stock is such a consideration as meets the requirements of our constitutional provision defining what consideration may be received for stock of a Delaware corporation. That provision is found in article 9, § 3, of the Constitution, and is as follows:
"No corporation shall issue stock, except for money paid, labor done or personal property, or real estate or leases thereof actually acquired by such corporation."
In Cahall, Rec'r, v. Lofland et al., 12 Del. Ch. 299, 114 A. 224, the Chancellor held that the unsecured promissory note of a subscriber is neither "money paid" nor "property actually acquired" within the meaning of the constitutional clause just quoted. The case in which this ruling was made went to the Supreme Court on appeal. 13 Del. Ch. 384, 118 A. 1. The point, however, as to the sufficiency of the note as a consideration was neither affirmed nor denied by the Supreme Court, that court resting its decision on other grounds. The question, therefore, not being closed by a Supreme Court ruling, I shall accept the conclusion of the Chancellor in the case above referred to when the same was before him. My own views are so in harmony with his conclusion that I do not deem it necessary to recanvass the subject. The stock in question therefore was issued without lawful consideration. The corporation is entitled to have the status quo ante restored by a cancellation of the stock and a return of the unlawful consideration. The presence of a part of it in the hands of Dora Sohland and the intervener, Fishman, as hereinafter stated, cannot serve to alter the result. *Page 701 
Second. But if the ground first mentioned is not sufficient to support a decree in favor of the complainant, what follows is. In Lofland et al. v. Cahall, Rec'r, 13 Del. Ch. 384, 118 A. 1, the Supreme Court held that directors breach their fiduciary duty to their corporation by issuing to themselves stock in exchange for their own unsecured promissory notes, the stockholders being ignorant and never knowingly approving of the transaction, and the corporation, or its receiver, is entitled to treat the issue as void. The principle underlying that decision denounces the issue in this case as unlawful and entitles the corporation to treat it as void. For here, in view of the facts found, the issuance of the stock was to the injury of the Bankers' Mortgage Company and to the benefit of Sohland, who dominated both the subscribing and issuing corporations and caused them to take the action they did as a means of turning over his undesirable Harrisburg Foundry Machine Works stock in exchange for the Bankers' Mortgage Company stock. He came out of the transaction with $150,000 of Bankers' Mortgage Company's stock, and the Bankers' Mortgage Company has in place thereof a worthless note, together with collateral which the evidence shows ought then to have been regarded as of little, if any, value, and appears now to be entirely worthless. He used his position of influence and power in the Bankers' Mortgage Company to profit himself at its expense. This was in clear breach of his duty as president and director of the Bankers' Mortgage Company. The other members of the board are shown by the overwhelming weight of the evidence to have been either the subservient or the confiding instruments of his controlling influence. They simply register by their vote what his wish dictated. Some of the directors frankly state that they voted as Sohland desired because of fear of the consequences of his displeasure against them if they did otherwise, while others say that their subjection to his wishes was due to an unbounded confidence in his judgment and implicit faith in his representations. The board as a whole practically abdicated its function of judgment and allowed Sohland to frame its conclusions without any independent judgment on the part of its members or any inquiry touching the proposed corporate action beyond that addressed to Sohland himself, whose assurances were vigorously given and implicitly accepted. The circumstances show clearly that the issuance of the stock for an unlawful consideration benefited Sohland only and the whole transaction was in reality one between Sohland, the beneficiary in his private capacity, on the one side, and himself, as the controlling and dominating influence in the injured corporation, on the other side. He cannot retain the advantage and the corporation be made to endure-the injury which such a bargain entails.
All the stock acquired as a result of the scheme must be canceled and the so-called consideration received therefor returned.
This conclusion applies equally to the stock standing in the name of Dora Sohland and in the name of Samuel Fishman as to that which stands in the name of Sohland. This is for the following reasons: As to Dora Sohland, her solicitor at the argument admitted that the stock standing in her name is subject to the same fate as is her husband's. As to Fishman, he was ordered to produce his testimony in support of his intervening answer on or before September 1, 1925. He failed to produce any testimony, whatever. Neither did he request an enlargement of the time. His answer sets up the defense of a purchaser for value without notice. The allegations of the answer, however, are not evidence in the cause. Rule 38 of this court provides that:
"The answer shall not be evidence for the defendant at the hearing, unless the cause be heard on bill and answer."
The hearing not being on bill and answer, the rule applies. There is some evidence in the record to the effect that Fishman gave value for the stock acquired by him. This evidence was from the lips of Sohland, but was produced after the time when the limit for Fishman's production of testimony had expired. Sohland was producing testimony in defense of his own case and the record justifies the inference that his solicitor in offering the evidence as to Fishman conceived that it was pertinent to Sohland's defense, and that it was therefore not offered in behalf of Fishman. But upon the point of notice on Fishman's part, and disregarding for the moment his default under the order and assuming that he was in position to offer testimony upon the date when Sohland was testifying, it is still true that there is not one word of competent testimony to the effect that Fishman did not possess full and complete notice of all the facts surrounding the status of the stock he was purchasing. Fishman, therefore, has failed to maintain the defense which his intervention sets up.
Let a decree be prepared accordingly.
 *Page 138