SARAH RUBIN, as Administratrix, etc., of MAX RUBIN, Deceased, Respondent, v. SAMUEL G. SIEGEL and MICHAEL GOODMAN, Appellants.

First Department, July 3, 1919.

Contract — action for breach — pleading — annexing copy of contract to complaint with appropriate references thereto — variance between allegations of complaint and contract, contract controlling — contract construed — damages — prima facie case — burden of proof — breach of agreement by copartnership — dissolution after breach as mitigating damages — damages estimated as of date of breach — evidence of amount of damages — termination of personal service contract by death of party — evidence — admissions and declarations, right of party making, to explain — exclusion of explanatory evidence reversible error.

Where a complaint in an action for a breach of contract alleges the contract between the parties, and also annexes a copy and by appropriate reference makes the same a part of the complaint, if there is a variance between the contract and the allegations of the complaint, the terms of the contract must control.

The plaintiff entered into a contract with the defendants whereby, for the exclusive privilege for a term of years of carting material to and from the defendants to tailors and contractors working for them, the plaintiff agreed to pay a certain consideration in annual installments; the pay for the work of carting was to come from the tailors and contractors. The defendants terminated the agreement. It was contended as there was no agreement between the plaintiff and the tailors and contractors and as the defendants did not prevent the plaintiff from receiving and delivering back the goods there was no foundation for damages. *Held*, that since the defendants granted an exclusive privilege it must be assumed that, though they did not pay for the work, but the tailors and contractors

did, they had the right to select the truck, and, therefore, when the defendants terminated the contract, the possibility of the plaintiff doing the work or receiving pay from the contractors and tailors was effectually ended.

When plaintiff proved that he paid the money and was actually fulfilling the contract when it was broken by the defendants, he made a *prima facie* case. The burden then shifted to the defendants to prove that the contract was justifiably broken.

In an action against the members of a copartnership for breach of contract of a continuing nature the dissolution of the partnership cannot be taken in mitigation of damages.

Damages in an action at law for a breach of contract are estimated as of the date of the breach.

In an action for a breach of the contract stated the value of the contract at the time of the breach may be proved by showing what was received under the contract prior to its breach, as affording some evidence of what would have been received in succeeding years.

A contract for the personal service of a party is terminated by the death of that party.

Where a contract requiring the personal service of a party is breached by the other party, the death thereafter of the party required to render the services fixes the time by which damages for loss of prospective profits are to be determined.

When declarations or acts of a party are offered in evidence as admissions against him and they are calculated to show that his present attitude is inconsistent therewith, it is always competent for him to offer an explanation.

The exclusion of explanatory evidence offered constitutes reversible error.

APPEAL by the defendants, Samuel G. Siegel and another, from a judgment of the Supreme Court in favor of the plaintiff's intestate, entered in the office of the clerk of the county of New York on the 12th day of April, 1918, upon the verdict of a jury for $6,000, and also from an order entered in said clerk's office on the 22d day of April, 1918, granting plaintiff's motion for an extra allowance of costs and denying defendants' motion for a new trial made upon the minutes.

*Moses Feltenstein* of counsel [*Abraham Rosenstein* with him on the brief; *Abraham I. Smolens*, attorney], for the appellants.

*Morse S. Hirsch* of counsel [*Samuel Meyers* with him on the brief; *Morris & Samuel Meyers*, attorneys], for the respondent.

Page, J.:

We have arrived at the conclusion that this judgment will have to be reversed because of an error in the exclusion of evidence. As there will be a new trial, we feel that it is our duty at this time to pass upon several questions presented by the appellants of which, in our opinion a proper disposition was made upon the trial.

The appellants claim that the complaint does not state facts sufficient to constitute a cause of action. The complaint alleges the contract between the parties, a violation of which gave rise to the cause of action, and also annexes a copy and by appropriate reference makes the same a part of the complaint. Where this is done, if there is a variance between the contract and the allegations of the complaint, the terms of the contract must control. Therefore, we may disregard the allegations of the legal effect of the contract and resort to the contract itself as if it had been set forth in the body of the complaint *in extenso*. The contract recites that the defendants are engaged in the business of manufacturing clothing and, as such, sending out and receiving parcels and bundles; that the plaintiff (since deceased) is engaged in the trucking and express business and is desirous of procuring the exclusive right to cart all the cut work of the defendants to and from the tailors employed by them; the defendants, in consideration of a payment of $1,500 to them by the plaintiff in installments as therein specified, give to the plaintiff, between June 1, 1915, and June 1, 1926, the exclusive right and privilege of carting out the cut work and material to and obtaining the finished and return work from the tailors and contractors employed by the defendants in New York and Brooklyn, and the privilege of taking any shipments for Newark on notice to that effect in writing to the defendants; the plaintiff agreeing, in consideration of the granting to him of the said right and privilege, to be responsible for any and all goods, work or material placed within his control by the defendants or by any of the tailors or contractors with whom the defendants may be conducting business, and to pay on demand the value of such material, work, etc., that may be placed under his control as he may fail to deliver. The privilege was granted upon condition that the plaintiff should charge to

the tailors or contractors the fair and reasonable market value of such work, labor and services, and that such charge should be made to the said tailors or contractors, and in no event should the defendants be held responsible for any part thereof. The contract was not to be assigned without the written consent of the defendants and, upon failure of the plaintiff to pay any of the installments, the contract was to become void, and such sum as had been paid should become forfeited to the defendants. The right and privilege thereby granted were given on the express understanding that the plaintiff was to give his personal time and attention to the carting and delivery in connection with the business of the defendants, both in and out; that all orders of the defendants were to be promptly and carefully executed by him; that he was to comply with all rules and regulations of the defendants, and that all business of the defendants was to be given preference over all other work by the plaintiff. The complaint alleges performance on the part of the plaintiff until June 3, 1916, when it is alleged the defendants wrongfully and without just cause or provocation notified the plaintiff that they terminated and repudiated the agreement and refused to give the plaintiff any and all expressage and cartage work, and notified the plaintiff that they would not carry out the terms of the agreement and that they would not give him any expressage or cartage work during the remainder of the term of the contract.

The defects alleged in the complaint are, that there is no allegation that the contractors and tailors would have received the material, or were compelled under the contract to receive it, or that the defendants in any way interfered with the tailors and prevented them from receiving or returning the materials that defendants sent them, nor is there any allegation that the defendants prevented payment by the contractors and tailors to plaintiff, nor is there any allegation that the plaintiff could or did have any contracts with the tailors and contractors to receive it or to carry the goods back, or that the defendants in any way stopped or prevented them from receiving or delivering back the goods under any such arrangement; and, therefore, that there was no foundation for damages. This, however, ignores entirely the contract. Defendants, for

the consideration of $1,500, agreed to give to the plaintiff the exclusive privilege. We, therefore, must assume that they controlled such privilege and had it to give. Otherwise, there was nothing which the defendants could give. It is very evident that as the plaintiff carried the goods that were to be transported back and forth, the defendants were vitally interested in having the work done by a responsible party who was known to them and who would agree to be responsible; and, therefore, although defendants did not pay for the cartage, but the contractors and tailors did, we must assume — and it is a fair intendment — that the defendants had the right as between themselves and the contractors and tailors of selecting the truckman. Hence, when the defendants terminated the contract, the possibility of the plaintiff's doing the work or receiving pay from the contractors and tailors was effectually ended. When plaintiff proved that he paid the money and was actually fulfilling the contract when it was broken by the defendants, he made a *prima facie* case. The burden then shifted to the defendants to prove that the contract was justifiably broken. This presented a question of fact for the jury.

Defendants further claim that it was developed in the evidence that some time subsequent to the defendants' breach of the contract they discontinued sending out goods and dissolved the copartnership and, therefore, that damages could not be given beyond that period. We held on a former appeal (183 App. Div. 888) that the dissolution could not be pleaded as a partial defense in a supplemental answer. If this be so, the same matter cannot be taken in mitigation of damage. Damages in an action at law are estimated as of the time of the breach. The value of the contract at that time is that of which the plaintiff was deprived. This may be proved by showing what was received under the contract prior to its breach, as affording some evidence of what he would have received in succeeding years. The damages in such a case as the present are uncertain as to amount, but that they follow from the defendants' breach is not uncertain. It was, therefore, a question for the jury to apply their experience and common sense to the facts proved and reach the best result they could. Judge EARL, writing for the

court in *Wakeman* v. *Wheeler & Wilson Manufacturing Co.* (101 N. Y. 205, 209 *et seq.*), has collated and reviewed the cases applicable and enunciated the rule to be observed in this class of cases.

A question has been presented on this appeal which, owing to the death of the plaintiff pending the appeal, it is not necessary for us to consider, *i. e.*, whether the justice should have charged, as requested by the counsel for the defendants, " that in estimating the prospective profits of the contract, if it have any, the jury must also take into consideration that while it purports to be a contract for ten years the death of either of the defendants, or the death of the plaintiff, during the life of the contract, would terminate it." Whatever may have been our view of this question, the death of the plaintiff has fixed the time at which the contract would have necessarily terminated if the defendants had not broken it. The contract by its terms provided for the plaintiff to give his personal time and attention to the business. His death, therefore, would *ipso facto* have terminated the contract. The profits were prospective. The plaintiff should be allowed to recover only such profits as the facts show he was deprived of by the defendants' breach of the contract. Had both parties in good faith performed the contract, the death of the plaintiff ended the possibility of further profits. The value of the contract then would be measured by what he had earned and what he would have earned up to the date of his death. If there was upon the former trial an uncertainty whether the contract would have continued for the full contract period, there will be no such uncertainty on the new trial.

The defendants testified that they discharged the plaintiff because of his dereliction of duty in the performance of the contract, and evidence was given tending to show that the discharge was justifiable. In fact, this was the closely contested fact of the case. The plaintiff introduced in evidence a letter written to the plaintiff by the defendant Goodman, dated four days before the discharge, in reply to an application for the Newark work, in which was stated: " We have always given you all the work in accordance with our contract with you and are willing to continue doing so. If you desire our

Newark work you may have it by making proper arrangements so you can make daily deliveries as required." When Goodman was being examined he was asked by his counsel: " Now, will you tell the jury why you wrote this letter?" An objection that it was immaterial, irrelevant and incompetent was sustained. Unexplained, this letter would constitute a most damaging admission that the defendants were satisfied with the service the plaintiff was rendering, and was entirely inconsistent with their claimed dissatisfaction. The rule is that " where declarations or acts of a party are offered in evidence as admissions against himself and calculated to show that his present attitude is inconsistent therewith, it is always competent for him to offer an explanation." The exclusion of such evidence constitutes reversible error. (*Chamberlain* v. *Iba*, 181 N. Y. 486, 492; *Ferris* v. *Sterling*, 214 id. 249; *Collins* v. *Kelly*, 226 id. 180, 184.) The reason for the rule is thus stated by Professor Wigmore: " The impeaching force of a party's apparent admission, or of a witness' apparently inconsistent statement, lies in the self-contradictory states of mind which it discloses, and that thus his credit may be restored by an explanation which shows that there was no inconsistency. This explanation may often be made by showing that words were used in a sense different from that claimed by the opponent, or that a different state of facts was in mind at the time of the utterance; and the opinion rule should not interpose any bar." (Wigm. Ev. § 1972.)

Because the defendants were substantially prejudiced by the exclusion of this evidence the judgment and order appealed from must be reversed and a new trial granted, with costs to the appellants to abide the event.

CLARKE, P. J., DOWLING and SMITH, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellants to abide event.