O’Malley, J.
By the allegations of the amended complaint it appears that under date of December 9, 1927, a writing in the Italian language passed between the parties, a true translation of which, according to the plaintiff, is in manner and form as follows:
“ Paolo Magrini
“ New York
“ 55 W. 92 St.
“ In continuation of the understanding between us that regards the invention of the machine ‘ Aerelectron ’ that you wish to sell in the U. S. A., I the undersigned formally bind myself to:
'• (1) To help you in making the arrangements for the application for the patent in the U. S. A.— that is to say to present you to the right people, etc., etc.
“ (2) To occupy myself with the placing of the patent and the sale of the above-mentioned machines with the best possible profit to your advantage and with the best success.
“ (3) On the profit that you will receive from any eventual combination relative to the above you will give me 40% (forty per cent).
“ Awaiting your confirmation and signature, I remain
<l Sincerely,
“ MAX SONINO.
“ I accept the above. Paolo Magrini
“ New York 9-12-1927.”
The plaintiff’s original complaint declared upon three causes of action (1) for breach of contract; (2) quantum meruit based thereon; and (3) upon a joint venture growing out of the same alleged contract. A motion addressed to the sufficiency of this complaint *538 resulted in an order sustaining the first cause, and dismissing the second and third causes.
The first cause in the complaint now before us sets forth that the defendant’s father, an inventor, had assigned to the defendant all his right, title and interest to an invention called “ Aerelectron,” designed for air purification; that thereafter the contract attached to the complaint was made, by virtue of which the plaintiff covenanted to devote his best efforts to procúre a United States patent and to sell the invention in the United States to the best profit and advantage to the defendant; that the defendant covenanted to pay the plaintiff forty per cent of any profits which the latter might receive from “ any eventual combination ” in reference to the invention.
It is then alleged that the plaintiff undertook performance of his obligations, addressed himself to persons of influence and made inquiries as to the most effective manner of testing the invention; that he exhibited the machine and its effect in actual operation; that through a firm of attorneys he procured complete patent protection, thus preventing and rendering illegal any attempted infringement or unauthorized application of the mechanical and chemical principles involved; that due to errors of the defendant in describing the invention in his application for patents, such application was delayed until mistakes made could be corrected, and as a result patent protection was not finally secured until March, 1928.
It is further alleged that there was an agreement between the parties that no steps towards the exploitation or sale of the invention should be taken until complete patent protection had been obtained and in consequence the plaintiff had no opportunity to solicit interest in the invention on a large «scale and thereby perform his second covenant under the contract, until about April 1, 1928, when plaintiff was first informed that patent protection had been secured; that after securing this information the plaintiff began active solicitation of interest in the invention and to offer it for sale; that he attempted to interest an officer of the Banca Commerciale Italiana Trust Company, but was delayed because of his absence from the city of New York, of which fact plaintiff informed the defendant; that upon the return of the individual mentioned, plaintiff was promised an interview, which fact was also reported to the defendant; that defendant failed to deliver to plaintiff a complete description of the invention, although plaintiff had made numerous requests therefor; that the defendant was kept fully informed of each and every step plaintiff had taken for the purpose of selling the invention, but that the defendant refused to inform plaintiff of his activities in regard to such sale or exploitation.
*539 It is then alleged that on or about April 30, 1928, the defendant informed the plaintiff that he had found funds with which to form a company for the exploitation of the invention and had signed a contract for such purpose and that the services of the plaintiff were no longer required. Plaintiff alleges his protest, formal demand upon the defendant to perform, and to allow plaintiff to continue performance. Defendant’s breach is then alleged as well as plaintiff’s performance of all terms and conditions except as such performance was prevented by defendant, and damages in the sum of $10,000 are asked.
The second cause reiterates material allegations of the first, and further alleges that by virtue of said contract plaintiff and defendant entered into a joint venture for the exploitation of the invention; that under the contract the plaintiff was to receive forty per cent of the profits resulting from the sale or exploitation of the invention from whatever source they might arise; that the defendant has received substantial profits from an “ eventual combination ” relative to the sale of the patent in the United States, but that the amount of such profits is unknown; that the defendant has not accounted for such profits and refuses to account after demand and that the plaintiff has no adequate remedy at law.
Plaintiff demands a money judgment in the sum of $10,000, with interest from April 30, 1928; an accounting of all moneys received by the defendant as profits arising out of the joint venture; that the interest of the parties be determined and fixed and that the plaintiff have judgment for such sums as may be found due.
The plaintiff’s rights must rest upon the writing which passed between the parties. We must construe it as it is found and not according to the legal effect which the pleader places upon it; and if there be variance between the contract and the allegations of the complaint, the former must control. (Rubin v. Siegel, 188 App. Div. 636; Queen v. Benesch, 191 id. 83.)
Though in the form of a letter by the plaintiff to the defendant, which the latter accepted, we construe the instrument as an offer by the defendant to the plaintiff. Upon the plaintiff furnishing the consideration therein provided for, the agreement might have ripened into an unilateral contract. It is to be observed that no specific time within which the plaintiff is to perform his services is provided for, nor is there any exclusive right given to him, nor does the defendant appear to be obligated in any way. The writing was not a binding or bilateral contract in and of itself, and seems to fall within the principle of Schlegel Mfg. Co. v. Cooper’s Glue Factory (231 N. Y. 459), rather than within that of Wood v. Duff-Gordon (222 id. 88).
*540 It is to be noted that under the defendant’s offer the consideration on the plaintiff’s part was two-fold, first, the obtaining of the patent; secondly, the procuring of financial assistance to exploit it. While it is not specifically alleged' when such took place, giving the complaint every fair intendment to which it is entitled, we will assume that it sets forth that the patents were procured through the assistance of the plaintiff before the defendant’s offer was withdrawn by his refusal to further permit the plaintiff to continue his efforts. But this partial performance, it seems to us, was not sufficient to justify the conclusion that the offer had ripened into a contract.
As already noted, the consideration for defendant’s offer consists of two parts, and is so treated in the complaint itself. Paragraph 10 alleges that the agreement was that no step should be taken to sell or exploit the invention until full patent protection had been secured and that for this reason the plaintiff had no opportunity “ to perform his second covenant under the contract ” until on or about the 1st of April, 1928, when he was informed that patent protection had been secured. Inasmuch as there was no apportionment in the offer of each part of the consideration, it was incumbent upon the plaintiff to perform both before he could assert an acceptance of the offer through performance. The defendant was' justified legally in withdrawing the offer at any time before the consideration had been furnished in reliance thereon.
Whether or not the plaintiff might have a cause of action based on quantum meruit under proper allegations of fact, we cannot and do not now determine. There is only before us an alleged cause of action based upon a purported contract. There being no contract pleaded, there is no cause of action stated, either on the contract as such, or on the theory of a joint venture evidenced by such writing.
It follows that the order should be reversed, with ten dollars costs 'and disbursements, and the motion to dismiss the complaint under rule 106 of the Rules of Civil Practice granted, with ten dollars costs, with leave to the plaintiff to plead over within ten days upon the payment of said costs.
Dowling, P. J., Finch and McAvoy, JJ., concur; Martin, J., dissents as to the first cause of action and concurs as to the second and third causes of action.
Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs, with leave to plaintiff to serve an amended complaint within ten days from service of order with notice of entry thereof upon payment of said costs.