PIETRO SARDONE, Respondent, *v.* JOSEPH DIAMOND HOLDING CO., INC., Appellant, Impleaded with JOSEPH DIAMOND CONSTRUCTION COMPANY, Defendant.

First Department, May 3, 1935.

*William Roth* of counsel [*George D. Zahm* with him on the brief; *William Roth,* attorney], for the appellant.

*David D. Glanz* of counsel [*Horace Valenstein* with him on the brief; *David D. Glanz,* attorney], for the respondent.

MERRELL, J.   Two causes of action are set forth in the complaint, the first cause of action being to recover damages based upon an alleged breach of contract of lease entered into on June 27, 1925, by plaintiff, respondent, with the defendant Joseph Diamond Construction Company, a domestic corporation.   It is alleged that at the date of the execution of the lease herein, the Joseph Diamond Construction Company was engaged in the process of building certain apartment houses in the borough of Bronx, New York city, on property owned by said construction company, and which property is now owned by the defendant, appellant, Joseph Diamond Holding Co., Inc., and, while so engaged and on or about June 27, 1925, entered into an agreement and lease in writing with plaintiff. A copy of said lease is annexed to and forms a part of the complaint. The lease was for a term of twenty-one years, commencing on July 1, 1925, and was for a total rental, for the twenty-one-year term, of $2,000, $1,000 of which was to be paid on the execution of the lease and $1,000 upon completion of the construction of said apartment houses.   The lease covered one room in the premises known as 977 East One Hundred and Seventy-eighth street, in the borough of Bronx, New York city.   The complaint contains many conclusory allegations as to the scope and effect of said lease, which are not borne out by the terms of the lease itself.   It is elementary that the plaintiff's rights must rest upon the writing which passed between the parties, and not according to the legal effect which the pleader places upon said contract.   If there be a variance between the contract and the allegations of the complaint, the former must control. (*Sonino* v. *Magrini*, 225 App. Div. 536; *Rubin* v. *Siegel*, 188 id. 636; *Queen* v. *Benesch*, 191 id. 83.)   The contention of the plaintiff, as set forth in the first cause of action alleged in the complaint, was that under said lease it was agreed between the parties that the taking of the lease by the plaintiff was upon condition that he be permitted to fill with ice the iceboxes in the various apartments, and that the construction company install said iceboxes in said apartment houses.   Plaintiff further alleges that the defendant Joseph Diamond Construction Company conveyed and devised said apartment houses on or about June 9, 1931, to the defendant, appellant, Joseph Diamond Holding Co., Inc., in fee, and that at all the times thereafter the defendant Joseph Diamond Holding Co., Inc., was the owner in fee thereof.   Plaintiff further alleges that said appellant had knowledge of the existence of said agreement and lease entered into by plaintiff and the construction company and took title to the premises subject to the terms and conditions thereof. It is then alleged in the eleventh paragraph of the complaint " That the defendants, in violation of the terms and conditions of the said

agreement and lease, failed and neglected to perform all the terms and conditions of the said agreement and lease on their part to be performed, in that during the months of April and May, 1934, the defendant, Joseph Diamond Holding Co., Inc., installed frigidaires in the premises covered by the said agreement and lease, and removed therefrom the ice boxes which had been installed in the apartments in the said apartment buildings, thereby destroying the plaintiff's ice business."

As a second cause of action, plaintiff repeats the allegations of the complaint, with the exception of paragraph eleventh, and alleges that the defendants, in violation of the terms and conditions of said lease, failed and neglected to perform all the terms and conditions of said agreement and lease, in that during the months of April and May, 1934, the defendant Joseph Diamond Holding Co., Inc., installed frigidaires in the premises covered by said agreement and lease and removed the iceboxes from the various apartments in said apartment houses, thereby evicting the plaintiff from said leased premises, and that plaintiff has surrendered the leased premises to the defendant Joseph Diamond Holding Co., Inc. The complaint is unverified, and was dismissed by the court at Special Term as to the defendant Joseph Diamond Construction Company. The court, however, held that by the installation in said premises of said frigidaires by the defendant Joseph Diamond Holding Co., Inc., in 1934, a breach of said contract on the part of the holding company occurred, and that by such act the holding company denied the plaintiff the right it sold him. The court denied the motion to dismiss the complaint as to said holding company.

We are of the opinion that the court erred in sustaining the complaint as against the defendant, appellant. Stripped of the conclusory allegations contained in the complaint and considering alone the terms of the contract of lease, which plaintiff alleges was broken by the defendant Joseph Diamond Holding Co., Inc., we are unable to find any basis, either for plaintiff's right to recover damages for the alleged " breach " or by reason of the alleged eviction of the plaintiff from the leased premises as the result of the installation of the so-called " frigidaires." The lease itself is a very simple instrument whereby the Joseph Diamond Construction Company leased to plaintiff one room set apart by the owner of the apartments as a storage place for ice, for the term of twenty-one years, commencing July 1, 1925, and ending July 1, 1946, at a rental of $2,000, payable in two installments, both of which were paid by the tenant. The lease then specifically provides that the tenant was to have the use of the one room aforesaid and was to " at all times have access to the dumbwaiters, or other means of access to the said premises,

Nos.     , East 178th Street, during the term of this lease, for the purpose of delivering ice to the customers of the tenant in the said other buildings." This was the only covenant of the lease with reference to the room held by the plaintiff. The lease, however, contained the following provision: " It is expressly agreed that the landlord does not guarantee freedom from competition in any respect, and that this lease is intended solely as a lease of the room herein mentioned and of access to the buildings herein mentioned, with the privilege of selling and delivering ice to all of the buildings mentioned herein." The written lease itself between the parties, upon which the plaintiff must rely, falls far short of sustaining the allegations of the complaint, that the Joseph Diamond Construction Company represented to plaintiff that it would install iceboxes in each and every apartment in the above apartment houses, and that plaintiff agreed to undertake said lease and agreement on condition that he be permitted to fill with ice the said iceboxes which were to be installed in the said premises. There is no agreement whatever to be found in the lease with reference to the installation of any iceboxes by the construction company. The lease contains no provision supporting the allegations of the plaintiff that, in violation of its terms and conditions, the holding company removed the iceboxes from the premises and installed, in place thereof, frigidaires. There is no provision in the lease justifying the conclusory allegation of the complaint, that the defendant construction company represented to plaintiff that it would install iceboxes in each and every apartment of said apartment houses, or that the plaintiff entered into the lease and agreement on condition that he be permitted to fill with ice the said iceboxes which were to be installed in the said premises. We think there was no basis whatever for the holding of the court at Special Term that by the installation of said frigidaires the defendant, appellant, denied the plaintiff any right which he acquired under the lease. No facts are alleged indicating either that the alleged act of the defendant, appellant, denied the plaintiff any right referred to in the agreement or that any obligation was assumed on the part of the defendants to maintain iceboxes in the apartments of said apartment houses. There is no statement in the lease that the defendants would refrain from installing in the various apartments modern refrigerating appliances. While ordinarily a party attacking a pleading for insufficiency admits the truth of the allegations contained therein, where, as in the case at bar, plaintiff's cause of action is based upon a written instrument, a copy of which is annexed to the complaint, the defendant is not deemed to admit the conclusory allegations of the plaintiff, but may rely on the terms of the written lease. In *Malco Trading Corp.* v.

*Mendelson-Silverman, Inc.* (240 App. Div. 322) this court (at p. 325) stated: " The legal effect of these escrow agreements as set out in paragraph XI, * * * is not admitted by the defendants on a motion under rule 106 of the Rules of Civil Practice. As was said by Mr. Justice O'MALLEY in *Sonino* v. *Magrini* (225 App. Div. 536, 539): ' *The plaintiff's rights must rest upon the writing which passed between the parties. We must construe it as it is found and not according to the legal effect which the pleader places upon it; and if there be variance between the contract and the allegations of the complaint, the former must control. (Rubin* v. *Siegel,* 188 App. Div. 636; *Queen* v. *Benesch,* 191 id. 83.)' " (Italics are the writer's.)

It very clearly appears from the terms of the lease itself that neither the original landlord which executed the lease nor the present owner, the defendant, appellant, ever agreed to maintain iceboxes or to prevent the use of other forms of refrigeration in the buildings in question. Any such agreement, had it been entered into, would have been in direct violation of the provisions of the Penal Law hereinafter referred to. The great difficulty in the order denying the motion of the defendant, appellant, for dismissal of the complaint for insufficiency was the assumption by the Special Term that the installation of the so-called " frigidaires " involved a breach of the terms of the lease. The court at Special Term overlooked the fact that there was no provision in the lease that the lessor, or its assignee, violated. The so-called " breach " occurred without the violation of any duty on the part of the lessor or its assignee. All that the lease in question covered was the " room herein mentioned and of access to the buildings herein mentioned, with the privilege of selling and delivering ice to all of the buildings mentioned herein," and the lessor expressly provided in the lease that it did not guarantee freedom from competition in any respect, and that the lease covered merely the room mentioned, together with access to the buildings with the privilege of selling and delivering ice to all the buildings mentioned in the lease. No other obligation whatever was assumed by the landlord. The attempt on the part of the plaintiff to read into the contract some foreign agreement not to be found within the terms of the lease clearly violates the principle of law relating to the parol evidence rule.

The court at Special Term overlooked the fact that the alleged agreement upon which the plaintiff relied, if made, would be a violation of the express provisions of the Penal Law declaring a public policy against the establishment of a privilege with respect to the sale of ice, fuel or similar commodities in apartment houses. Section 861 of the Penal Law, as it stood at the time of the making of the agreement, was enacted by the Legislature as chapter 702 of

the Laws of 1917. When the agreement was made the statute provided, in part, as follows: " Agreements or contracts for privileges to deal with occupants of tenements or apartment houses. 1. A contract, agreement or arrangement entered into or executed by and between the owner of an apartment house or a tenement, or any of his agents, employees or servants and a dealer in or seller of fuel, ice or food, or his agents, employees, or representatives for the purpose of giving to such dealer or seller the privilege of selling or delivering fuel, ice or food, to the persons occupying such apartment house or tenement is *against public policy and void.*" (Italics are the writer's.) Courts have uniformly held, whenever the question was presented, that as to any such agreement as plaintiff claims existed, the parties are deemed to be *in pari delicto*, and that no action would lie to recover moneys paid pursuant thereto or to enforce such an illegal agreement. (*Halloran* v. *N. & C. Contracting Co.*, 223 App. Div. 721, 723; affd., 249 N. Y. 381.)

We are of the opinion that the complaint fails to state a cause of action against either of the defendants, and that the order appealed from should be reversed, with twenty dollars costs and disbursements, and defendant, appellant's motion granted, with ten dollars costs.

MARTIN, P. J., TOWNLEY, GLENNON and UNTERMYER, JJ., concur.

Order reversed, with twenty dollars costs and disbursements, and motion granted, with ten dollars costs.