■ DOUGLAS FACTORS, INC., Respondent, v. P & R DISTRIBUTORS, INC., et al., Appellants. (Action No. 1.) P & R DISTRIBUTORS, INC., Appellant, v. DOUGLAS FACTORS, INC., Respondent. (Action No. 2.)

*Per Curiam.* P & R Distributors, Inc.— defendant in Action No. 1 and plaintiff in Action No. 2 — and the remaining defendants in Action No. 1 appeal from a judgment, entered after a trial before the court without a jury, in favor of Douglas Factors, Inc. (Douglas), plaintiff in Action No. 1. The judgment is in the sum of $45,740.56 and makes provision for the increase or decrease of that amount upon the happening of certain events occurring subsequent to rendition thereof.

Douglas is a factoring corporation. In December, 1955, Douglas entered into a contract with P & R Distributors, a retail appliance dealer, whereby Douglas purchased from P & R retail installment sales contracts. The other defendants in Action No. 1 guaranteed P & R's obligation under the contract, and their liability depends wholly on the liability of P & R.

Between December, 1955 and June, 1957, P & R assigned to Douglas approximately 3,000 installment contracts of a face value in excess of one-half million dollars. Under the contract with Douglas, as supplemented and modified, P & R was obliged to repurchase accounts on which the debtors had defaulted. There was also a provision that if P & R defaulted on any of its obligations to Douglas, P & R was obliged, on demand, to repurchase all of the accounts theretofore assigned to Douglas, whether such accounts were in default or not.

On the purchase of an account from P & R, Douglas paid P & R 80% of the net remaining sum due from the debtor; from this 80% Douglas deducted, in advance, its charges, to wit, $1\frac{1}{4}\%$ per month of "the full balance remaining after the down payment has been deducted from the total sales price" for the term of the installment contract. The remaining 20% was held as a reserve, which, when the installment contract was paid, would be held by Douglas as security for P & R's other obligations. Thus, when installment contracts were assigned to Douglas, Douglas deducted from the 80%, the aforesaid charges of $1\frac{1}{4}\%$. In the event of repurchase or prepayment of a contract by P & R, before the expiration of one half of the stipulated term of an installment contract, there was provision for an abatement of charges.

With reference to installment contracts that went into default, Douglas was allowed a further charge at the rate of $1\frac{1}{4}\%$ per month of the face amount of the contract from the date of maturity of that contract until fully paid, either by repurchase by P & R or by the customer. This was done without regard to the balance due on any contract in default; and it is admitted that this charge was applied in instances where the balance due was as low as 50 cents. In one schedule, there is an unpaid balance indicated of 50 cents on an account to which there has been added a seven months' "late charge" of $16.45 which, together with "Prior late charges" of $39.95, results in a balance due thereon of $56.40. In another instance in this same schedule a 77-cent item becomes $48 and a $1 item becomes $55.81.

P & R was also obliged to repurchase all accounts becoming delinquent. Early in 1957, Douglas made several requests that P & R repurchase delinquent accounts. When these requests were not complied with, Douglas on June 19, 1957, pursuant to the provisions of paragraph 8 of the contract, demanded that P & R repurchase forthwith all of the paper theretofore acquired by Douglas. That demand was refused, and such refusal constituted a breach of the agreement. It should be noted that paragraph 8 gave Douglas the right,

in the event all assigned accounts were not repurchased on demand, to sell them at public or private sale.

In December, 1957, P & R commenced Action No. 2 for an accounting and damages. Douglas countered with Action No. 1 in which it sought an injunction, damages of $124,818.06 for breach of P & R's obligation to repurchase on demand all the accounts theretofore transferred, and, in a third cause, to impress liability on the guarantors. The actions were consolidated.

The judgment obtained by Douglas awards Douglas $45,740.96 as due on October 23, 1959. That sum was reached as a consequence of saddling P & R with "late" charges of $40,531.63 and $425 in auditing charges, as well as adding $17,629.63 in attorneys' fees and expenses and $5,160.68 for collection fees. Thus, the additional charges, totaling $63,321.84 amount to more than the judgment, and if eliminated would require a judgment in favor of P & R.

In our opinion, there was no warrant for imposing the "late" charges; and the awards of counsel fees and expenses, in the amounts indicated, must also fall.

Simply stated, we conclude that the rights of the parties became fixed as of June 19, 1957, when the contract was terminated by Douglas by virtue of P & R's breach in failing to comply with the demand by Douglas that P & R repurchase all the outstanding accounts. The measure of P & R's liability was then the amount due to Douglas for advances made to that date with legal interest from that date. (*Dickinson* v. *Hart*, 142 N. Y. 183, 188; *Rubin* v. *Siegel*, 188 App. Div. 636; 25 C. J. S., Damages, § 74, p. 566.) As a general rule damages upon breach of contract are to be measured as of the date of the breach. (*Parker* v. *Hoppe*, 257 N. Y. 333, 341.) This leaves no permissible area for any "late" charges subsequent to June 19, 1957 and makes it unnecessary for us to pass upon the persuasive arguments of the appellant that the late charges are a shocking and unconscionable penalty. Since the contract does provide for the payment of legal fees, there must be a reappraisement of the proper amount of such fees in the light of any future determination of what may be due to either of the parties.

Consequently, the judgment should be reversed on the law and the facts, without costs, and a new trial granted, at which trial the respective liabilities of the parties should be fixed in accordance with the views expressed hereinabove.

Rabin, J. P., Valente, Stevens, Eager and Steuer, JJ., concur.

Judgment unanimously reversed on the law and the facts, without costs, and a new trial granted, at which trial the respective liabilities of the parties should be fixed in accordance with the views expressed in the opinion of this court.