NASSAU SUPPLY Co., INC., Appellant, *v.* ICE SERVICE Co., INC., Respondent.

(Argued October 25, 1929; decided November 26, 1929.)

*Joseph P. Segal* and *I. Gainsburg* for appellant. The contract is valid and enforcible. (*Moran* v. *Standard Oil Co.*, 211 N. Y. 187; *Epstein* v. *Gluckin*, 233 N. Y. 490; *Hopedale Electric Co.* v. *Electric Storage Battery Co.*, 132 App. Div. 348; *Ehrenworth* v. *Stuhmer & Co.*, 229 N. Y. 210; *Edison El. Ill. Co.* v. *Thatcher*, 229 N. Y. 172; *Van Woert* v. *Albany & Susquehanna R. R. Co.*, 67 N. Y 538; *Wales* v. *Alexander*, 130 N. Y. 642; *City of New York* v. *Pelli Paoli*, 202 N. Y. 18; *Sage* v. *Hazzard*, 6 Barb. 159; *Booth* v. *Cleveland Mill Co.*, 74 N. Y. 15; *Jugla* v. *Trouttet*, 120 N. Y. 21; *Seibert* v. *Dun*, 216 N. Y. 237; *East* v. *Cayuga Lake Ice Line*, 66 Hun, 636; *Texas Co.* v. *Pensacola Maritime Corp.*, 279 Fed. Rep. 19.)

*Walter Jeffreys Carlin* for respondent. The so-called contract was void for lack of mutuality and the complaint was properly dismissed. (*Dady* v. *O'Rourke*, 172 N. Y. 453; *Booth* v. *Milliken*, 127 App. Div. 525; *Renney* v. *DeCarr*, 177 App. Div. 237; *Schlegal Mfg. Co.* v. *Cooper Glue Factory*, 231 N. Y. 459; *United Press* v. *New York Press Co.*, 164 N. Y. 410.)

CRANE, J. The defendant is a domestic corporation engaged in the business of manufacturing and selling ice in the city of New York and on Long Island. Plaintiff

is also a domestic corporation and in 1923 and 1924 was engaged in the coal business.

On the 21st day of March, 1924, these parties entered into a written agreement reading as follows:

" ICE SERVICE COMPANY, INC.
" Coal Department
" 121st St. near Jamaica Avenue
" Richmond Hill, N. Y.
" NEW YORK, *March* 21, 1924.
" Agreement made this day between Ice Service Co., Inc., and the Nassau Supply Co., Inc., 20 West Seaman Ave., Freeport, Long Island.

" Witnesseth — that for and in consideration of the mutual agreements herein contained the Ice Service Co., Inc. hereby agrees to sell (strikes and delays from causes beyond our control excepted) to the Nassau Supply Co., Inc. of # 20 West Seaman Ave., Freeport, Long Island, (100) One Hundred tons of ice each day at the Forest Park Plant, 76th St. and Jamaica Ave., Woodhaven, Long Island, at $2.50 per ton, and the said Nassau Supply Co., Inc., hereby agrees to purchase from the said Ice Service Co., Inc., all the ice used by them up to (100) One Hundred tons. Payments for same daily.
" From May 1st, 1924, to April 30, 1925.

" ICE SERVICE CO., INC..
" WM. H. DOHRMANN,
" *Vice-President.*
" NASSAU SUPPLY CO.,
" JOSEPH RAO,
" *Secty.*
" Witness:
" FRANK L. DIETZ."

On the face of this paper agreement there appears to be a sufficient consideration for a contract, or, in other words, mutual binding promises, a mutuality of consideration. In fact the agreement itself states that the

consideration is the "mutual agreements." Promises, however, are not always sufficient; they must be of some value, or at least not merely empty formal words, incapable of performance. (*Topken, Loring & Schwartz, Inc.*, v. *Schwartz*, 249 N. Y. 206, at p. 210.) The unconflicting evidence in this case shows that the agreement of the Nassau Supply Company was of this latter nature.

Upon the part of the defendant it agreed and promised to sell to the Nassau Supply Co., Inc., of 20 West Seaman avenue, Freeport, Long Island, one hundred tons of ice each day at the Forest Park plant, Seventy-sixth street and Jamaica avenue, Woodhaven, Long Island. On the part of the Nassau Supply Co., Inc., it agreed to purchase from the said Ice Service Co., Inc., all the ice used by them up to one hundred tons. Contracts of this nature, apparently made in good faith, must reasonably imply certain things. We said in *Edison Electric Illuminating Co.* v. *Thacher* (229 N. Y. 172): " It is not necessary in all cases that the agreement of a party should be specifically stated. It is sufficient when the wording used clearly indicates the intention. * * * Contracts, unlike deeds and insurance policies, need not take a prescribed form but are spelled out of the phrasing adopted by the parties."

This contract, therefore, implied certain things. It implied at least that the Nassau Supply Co., Inc., at time of performance would use ice as a going concern, that a supply had to be furnished for its use on or about May 1, 1924, up to April 30, 1925. The contract carried with it an implication that the Nassau Supply Co., Inc., would use ice daily. The defendant agreed to sell one hundred tons each day. The plaintiff agreed to purchase all the ice used by it up to one hundred tons, " payments for same daily." We do not mean to say that the failure to take ice every day would be a breach of the contract. What we do say is that these words carry with them the idea of something substantial; convey the meaning that the plaintiff was a business enterprise in existence, using

ice which, in the contemplation of the parties, might be required daily. This daily supply the defendant undertook to sell up to one hundred tons.

If these were the facts, there would be an enforcible contract, and such has been the ruling of this court. (*Ehrenworth* v. *Stuhmer & Co., Inc.*, 229 N. Y. 210; *Schlegel Manufacturing Co.* v. *Cooper's Glue Factory*, 231 N. Y. 459 (cases cited); *Imperial Refining Co.* v. *Kanotex Refining Co.*, 29 Fed. Rep. [2d] 193; Williston on Contracts, §§ 103 to 103-e, inclusive.)

What did the evidence show? The undisputed facts are that the Nassau Supply Co., Inc., was not in the ice business but in the coal business; that on March 21, 1924, when it made the contract it had no use for ice and might never have any use for it. It had no place of business at the address given in the contract, 20 West Seaman avenue, Freeport, Long Island. Whatever business its president, Mr. Andrie, had was carried on from his residence, 1299 Sterling place, Brooklyn, N. Y. The plaintiff had no license to engage in the retail ice business in the city of New York in the years 1924 and 1925, and was not engaged in that business in the city of New York. The fact further appears that when the first of May came the Nassau Supply Co., Inc., ordered no ice; it had no use for any ice. June went by and still no ice was ordered. The vice-president of the defendant looked up the Nassau Supply Co., Inc., at its given address and found that there was no such company in Freeport, Long Island. A man named Williams, for a short period consisting of a few weeks or months, carried on the ice business under the name of the Hillcrest Ice Co. He had three or more wagons but the extent of the business does not appear. Hillcrest Ice Co. was a trade name and not a corporation; apparently Williams was the sole owner. He bought ice from the defendant until his supply was stopped because of his failure to pay his bills. The first demand for ice by the plaintiff company was in the

latter part of June, when its president asked the defendant to sell ice to Williams and charge it to the Nassau Supply Co., Inc. The Hillcrest Ice Co., so it is said, was taken over by the Nassau Supply Co., Inc., which means that it took the wagons. When credit was refused Williams these wagons were left in the yards of the defendant Ice Service Co., Inc., and never called for. How the purchase of the wagons was made does not appear. The president of the Nassau Supply Co., Inc., cannot remember when he purchased the Hillcrest Ice Co. or whether he obtained a bill of sale for it. All we have is his statement that Williams had a route, a few wagons; that the plaintiff purchased the wagons and the business and that the defendant was asked to give Williams credit or to give Williams a supply of ice and charge it to the plaintiff. The only other bit of evidence in the case showing that the Nassau Supply Co., Inc., had any ice prospects was given by Pasquale Digilio, who says that in March or April he told Mr. Andrie that he would take ice from him, instead of buying it from the Knickerbocker Ice Co. Digilio's business was in Brooklyn, so far as appears from the evidence, and whatever ice he thereafter got was from the Mittleton branch of the plaintiff. The president of the plaintiff admits that neither he nor his company made any demands for ice until the so-called purchase of the Hillcrest Ice Co. about June 24.

What, may we ask, was the consideration which the Ice Service Co., Inc., received for its agreement to sell one hundred tons of ice a day to the Nassau Supply Co., Inc., of 20 West Seaman avenue, Freeport, Long Island. There was in reality no trade or custom or use or demand or business existing at the time the plaintiff made the contract in March or on the 1st of May when ice was to be taken which would, in any way whatever, measure a supply, a requirement or a need. There was no fact or circumstance by which the use or need of the plaintiff's requirements could be measured or made reasonably

certain. In all the New York cases cited, where a contract has been to supply goods for the needs or requirements of another's business, there has been a going business with the need of a supply and it was only the uncertainty as to the extent of this need or the amount of the supply required which was left for future determination. (See *Wells* v. *Alexandre*, 130 N. Y. 642.)

The law which we are stating has application to this contract, as we construe it. When the first of May came for the performance of the contract the plaintiff had no ice business and so far as the record shows, has never had a demand or need for ice in its business, or made a demand upon the defendant under the terms of the contract. We find that the intention of these parties was that the seller agreed to sell and the buyer to take the buyer's normal or ordinary needs up to the limit mentioned subject to the variation of its business. This is not a case where the buyer agrees to take all that he may subsequently want or may choose to buy, or the promise of a buyer not to buy except from a particular seller. We would then have a different question. (Williston on Contracts, § 104.)

The Nassau Supply Co., Inc., as before stated, impliedly represented that it was either in the ice business or would be in the ice business with a market for ice in May or June, and would require ice daily, not to exceed one hundred (100) tons. It was not in such business, did not establish such a business and made no *bona fide* demand for any ice under its contract. In other words, it had no need for ice.

The complaint was properly dismissed.

The judgment should be affirmed, with costs.

Concur: CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ.

Judgment affirmed.