DANIEL PETIGOR, Plaintiff, *v.* MORGAN LITHOGRAPH COMPANY, Defendant.

Supreme Court, New York County, January 7, 1930.

*Edward Petigor* [*Jay Leo Rothschild* of counsel], for the plaintiff.

*Sullivan & Cromwell* [*Emery H. Sykes* of counsel], for the defendant.

SHERMAN, J. Defendant, an Ohio corporation, has for many years been engaged in the lithographing business in Cleveland, Ohio, and one of its important competitors was the Ritchey Lithographing Corporation, which maintained an extensive plant in the city of New York. Defendant wished to acquire the stock and assets of the Ritchey Lithographing Corporation, and to that end, through emissaries, sought options upon all of its outstanding capital stock. Plaintiff had for many years been the superintendent of the Ritchey Lithographing Corporation and owned twenty-five per cent of its stock; Wolff, likewise an officer of that corporation, also owned twenty-five per cent of its stock; Ritchey, its president, possessed the remaining fifty per cent. All these shares were held in a voting trust, and control could be achieved only by acquiring the entire issue. Negotiations ensued between defendant's representative and plaintiff and Wolff. Defendant was willing to pay to each $75,000 for his stock interest, but plaintiff insisted upon receiving $90,000 for the shares held by him.

Under those circumstances, a written option, dated April 16, 1925, was signed by plaintiff and Wolff, providing for the payment of $75,000 to Wolff and " $75,000 to Daniel Petigor on further condition that Daniel Petigor is to continue as superintendent of the Ritchey Lithographing Corporation for a period of three years from date that this option is exercised, if it is, at a salary of $400 a week, and that he receives a satisfactory contract therefor at the time of the exercise of this option. Said contract with Daniel Petigor to contain a clause permitting its cancellation by the Ritchey Lithographing Corporation on payment to Daniel Petigor at any time during this first year at $15,000, the second year at $10,000, and the third at $5,000." This option, whereby plaintiff's shares were purchased by defendant, was closed on May 16, 1925; Morgan, defendant's president, being present. Defendant had obtained an option

on Ritchey's shares, and was then potentially the owner of all of the shares of the Ritchey Lithographing Corporation.

Before the transaction was consummated with plaintiff and Wolff, plaintiff had exhibited to Morgan a proposed contract with the Ritchey Lithographing Corporation, which was approved by Morgan. Thereupon it was executed by plaintiff and by the Ritchey Corporation under date of May 13, 1925, and forms the basis of plaintiff's cause of action. This contract referred to the Ritchey Lithographing Corporation as the employer and plaintiff as the superintendent. Plaintiff's salary was fixed at $400 per week, and the employer was permitted to cancel the agreement at any time by payment to the superintendent (in addition to the weekly compensation) of the sums mentioned in the option. But it contained a further clause, viz.:

" WHEREAS, the superintendent is making sacrifices to enter into this agreement; and whereas, the same is advantageous to the employer: It is expressly understood and agreed that in the event of the breach or alleged breach or cancellation of this agreement by either party hereto for any reason whatsoever, or for any cause or alleged cause on the part of either party hereto, the corporation will pay the superintendent in addition to payments to said date the said sum of $15,000 if such cancellation, breach or alleged breach occurs during the first year, $10,000 if during the second year, and $5,000 if during the third year of the term of this agreement."

Thereafter plaintiff continued to act as the superintendent of the Ritchey Lithographing Corporation until the transfer of its assets to defendant. Meanwhile defendant had become the owner of all of the shares of the Ritchey Lithographing Corporation, and on June 26, 1925, the parties met for the purpose of transferring all of the assets of the Ritchey Corporation to defendant. Plaintiff's contract of May 13, 1925, with the Ritchey Lithographing Corporation was produced, and Morgan signified defendant's willingness to assume it, whereupon a formal written assignment of its interest in that contract was executed by the Ritchey Lithographing Corporation to defendant, and Morgan likewise signed defendant's name beneath the word " Accepted " at the foot of a copy of the contract. Plaintiff having in the option agreed to continue as superintendent of the Ritchey Lithographing Corporation for three years, and having so acted up to this time, thereupon commenced to work for defendant as its superintendent in the factory at which the plants of both the lithographing companies had been consolidated, and as superintendent of the enlarged plant rendered services to defendant for about eighteen months, receiving payment in accordance with the terms of the contract of May 13, 1925, until he was

discharged by defendant on November 9, 1926. Defendant tendered to plaintiff the unpaid balance of weekly salary then owing to him, but declined to pay the sum of $10,000 stipulated by the contract as payable upon termination during its second year.

The complaint, seeking that sum and the arrears of weekly salary, declares upon the so-called employment contract, setting forth both the assignment and the defendant's written acceptance. The answer, in addition to denials, defends upon the ground that this contract is void, as against public policy, as *ultra vires* on the part of the Ritchey Lithographing Corporation, and as without consideration, and then alleges as an affirmative defense facts claimed to constitute plaintiff's breach because of his insubordination which justified the discharge.

As between plaintiff and the Ritchey Lithographing Corporation the contract was illusory. If this action were against that corporation, it would be unenforcible. An agreement which calls for the payment of moneys to an employee without any obligation on his part to render services, and indeed rewards him for its breach, and likewise permits an employer to cancel it at will, is no contract at all in law. (Williston Cont. § 104; *Nassau Supply Co.* v. *Ice Service Co., Inc.,* 252 N. Y. 277; *Schlegel Mfg. Co.* v. *Peter Cooper's Glue Factory,* 231 id. 459; *Topken, Loring & Schwartz, Inc.,* v. *Schwartz,* 249 id. 206, 210.) But here the suit is not against the Ritchey Lithographing Corporation; it is against the defendant, the recipient of plaintiff's share, and the beneficiary of such services as he rendered to it after it had acquired the assets of the Ritchey Lithographing Corporation. While this agreement was not in conformity with the terms of the option, defendant and plaintiff treated it as being within the option requirement, approved it in its present form, and it became part of the purchase price paid by the defendant to plaintiff for his shares. Without it defendant could have obtained neither the plaintiff's shares nor his services.

Defendant countenanced the execution of this contract by the Ritchey Lithographing Corporation, and caused it to be delivered to plaintiff in consideration of plaintiff's parting with his shares. It felt bound to adopt it as its own obligation, when it took over the employer's assets. It has explicitly assumed responsibility for the payment of the lump sums mentioned in the contract, and is liable to plaintiff. Thus, whereas there is a dearth of consideration as between the original contracting parties, consideration is present as between the parties to this action. The agreement, stripped of the provisions calling for plaintiff's rendition of services, may be regarded as a vehicle whereby payment of $15,000 of the purchase price was merely postponed. That was the reason why plaintiff's

weekly salary had been increased in the sum of $100 beyond that which he and his associates had each theretofore received, so that this increase, which amounted to something more than $5,000 per annum, should compensate for the yearly diminution of the amount of the lump sum payment.

Upon the stipulation a verdict is directed in favor of plaintiff and against defendant in the sum of $10,000, with interest from November 9, 1926, together with the sum of $520, without interest.