FRED TROTTA, ADMINISTRATOR (ESTATE OF ALBERT L. ZIFKIN) *v.* THE METALMOLD CORPORATION ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued March 3—decided April 28, 1953

*Donald F. Keefe,* for the appellants (defendants).

*Alfonse C. Fasano,* for the appellee (plaintiff).

BALDWIN, J. The plaintiff brought an action against the defendant Metalmold Corporation and two of its directors, Blake and Swebilius, to recover damages for conversion of stock belonging to the plaintiff's decedent. The jury returned a verdict in favor of the plaintiff and the defendants have appealed. Error is claimed in the denial of the defendants' motion to set aside the verdict, in the charge and in rulings on evidence. The view we take of the case makes it necessary to consider only certain errors in the charge.

The plaintiff's claims of proof were: The plaintiff's decedent, Zifkin, who was known as Jordan,

was a master dental mechanic whose work included the molding of prosthetic devices by the so-called lost wax process. He conceived the idea that this process could be adapted to produce precision castings, in ferrous metal, of shapes that theretofore had required machining. For the process to be practical commercially, however, some way had to be found to control furnace temperatures very precisely during several hours of the production cycle. Jordan claimed to know how to do this. In 1948, he persuaded a group to finance a New York corporation, known as Acmecast Corporation of America, to exploit his idea. There was delay in the delivery of necessary machinery, and dissatisfaction arose among the stockholders of the corporation. At this time Jordan, with John Owsley and the defendants Robert Blake and Earl Swebilius, negotiated to buy out the Acmecast investors. The defendant Metalmold Corporation was incorporated. Owsley and Blake between them subscribed to 325 shares of $100 par preferred stock and 325 shares of $100 par common stock. Jordan subscribed for 300 shares of $100 par common stock.

Metalmold commenced doing business on July 14, 1949. The certificate of organization was dated August 29, 1949. Blake and Swebilius were president and secretary, respectively. Jordan was vice president and factory manager. Jordan worked to get the plant into production. This he was unable to do before his death on September 18, 1949. Owsley and the defendant Blake paid for their stock in cash. In payment for the 300 shares of common stock to be issued to Jordan, he submitted the following offer: "I hereby offer to The MetalMold Corporation, in return for the $30,000 par value common stock subscribed for me (300 shares) all inventions processes,

whether secret or otherwise, and whether now, or later to be, copyrighted or patented, that I have appertaining to casting by plastic mold processes. I further agree, as a part of this offer, to do all acts and execute all documents necessary or desirable to perfect title in the aforesaid in The MetalMold Corporation, and to apply for such patents and copyrights as in the discretion of said corporation shall be desirable, but at the expense of said corporation. I agree fully to disclose all my knowledge, skill and ideas with respect to casting by way of plastic mold processes to said company in further consideration for the issuance of stock above mentioned." This offer was accepted by the officers and directors of the corporation on August 29, 1949. On that date, the directors signed a certificate in the minute book of the corporation, as follows: "Statement Of Property Received For Capital Stock. We, the undersigned, a majority of the directors of The MetalMold Corporation, make and sign in this the Minute Book of said corporation this statement that the property described in the foregoing offer of Albert L. Jordan received in payment for his subscription to 300 shares of common capital stock, has an actual value to the amount for which it was received, *viz* $30,000. John E. Owsley, Robert M. Blake, Earl B. Swebilius, Malcolm Farmer, Albert L. Jordan."

On the same date, the certificate of organization of the corporation was signed by all of the then directors. It included a statement that all of the stock subscribed for, to wit, $95,000 worth, had been paid for, $65,000 in cash and $30,000 in property other than cash. Stock certificates and stubs in the stock book were filled out for all of the subscribed stock but no certificate was issued to anyone up to the time of the trial. The corporation became in-

solvent and went into receivership. Jordan, during his lifetime, and his administrator after his death, demanded that his stock certificate be issued to him. Sometime on or after August 29, 1949, the defendants converted Jordan's stock by refusing to issue the certificate.

The defendants' claims of proof were: Jordan represented that, by the use of his ideas, he could make precision castings in large volume, quickly and at low cost, and that no one else knew of the process, which would revolutionize industry. As a matter of fact, Jordan's proposed process was not new or original. Essentially the same process was being successfully used by other companies. An important part of the process was the use of a furnace to "burn out the molds." This idea was Jordan's but he did not consider it patentable. He agreed to write out his process, and he had done this in part before his death, but in so doing he had disclosed nothing that was not copied from standard trade journals. The Metalmold Corporation on July 14, 1949, began to spend money for salaries to Jordan and Blake and for factory wages, rent, light, power, water and materials. Jordan did not produce any castings in quantity or, indeed, a single casting that was satisfactory. He later admitted that he was at a loss to know how the problems of plastic castings could ever be solved. Jordan's representations concerning the novelty, efficacy and worth of his process were untrue and the process was valueless. In valuing the process as payment for stock in lieu of cash, the directors, including the defendants Swebilius and Blake, had relied upon Jordan's representations. No certificates representing any of the capital stock of the Metalmold Corporation were ever issued to any of the subscribers.

The defendants claim that they were justified in not issuing the stock certificates, since Jordan's offer was not "property" which could be accepted in lieu of cash for the payment of his stock subscription because his offer turned out to be worthless.

The court, after reading Jordan's written offer, charged the jury as follows: "Now [Jordan] makes an offer for stock and he offers among other things a promise. A promise is good consideration in the law of our land for a contract. We can pay money for what? For a promise to do, and it is binding. And in that case it is not the doing that is the consideration, it is the promise that is the consideration, and then later if the doing fails, of course, that is something else again. That might give rise to a cause of action for breach of contract. But in asking for the shares all that Jordan proposed and undertook to give is what you may find he offered to give in that written offer. Then if that was accepted by the corporation as payment then upon paying for his stock Jordan was entitled to have issued to him by the corporation a certificate." The defendants allege that in the light of their claims of proof this charge was erroneous.

Section 5169 of the General Statutes states that no corporation shall issue any certificate for stock "until the stock has been subscribed and paid for in full." It further provides that "[i]f any stock shall be paid for otherwise than in cash, a majority of the directors shall make and sign upon the record book of the corporation a statement showing particularly of what the property received in payment for stock subscriptions consists, and that it has an actual value equal to the amount for which it is so received." It further states that the judgment of the directors as to the value of this property shall be final, but that,

in case of fraud in the overvaluation of the property, they shall be liable to the corporation for the difference between the actual value of the property and the amount for which it was received. The purpose of the statute is primarily to protect those doing business with the corporation and who might become creditors. This is because stock subscriptions are assets of the corporation available for the payment of corporate debts. *Beach* v. *Beach Hotel Corporation,* 117 Conn. 445, 454, 168 A. 785; see *Stamford Trust Co.* v. *Yale & Towne Mfg. Co.,* 83 Conn. 43, 49, 75 A. 90.

The word "property" implies that that which is to be delivered to the corporation in payment for stock must have a real and substantial value. *Linden Bros.* v. *Practical Electricity & Engineering Publishing Co.,* 309 Ill. 132, 137, 140 N.E. 874; *Stevens* v. *Episcopal Church History Co.,* 140 App. Div. 570, 579, 581, 125 N.Y.S. 573; *Russell* v. *Tennessee & Kentucky Tobacco Co.,* 16 Tenn. App. 561, 568, 65 S.W.2d 256; *Woodson* v. *McAllister,* 119 F.2d 924, 925, rehearing denied, 121 F.2d 126; *Rhode* v. *Dock-Hop Co.,* 184 Cal. 367, 370, 194 P. 11. A corporation may legally issue stock in exchange for patents or a license to use a patent, or for a trade-mark to be used in the corporate business. 11 Fletcher, Corporations (Perm. Ed.) § 5189; see *Davenport* v. *Lines,* 72 Conn. 118, 127, 128, 44 A. 17. However, so-called secret processes and formulas that are of no substantial value and later turn out to be worthless do not constitute "property" that can be accepted in payment for the issue of stock. *Peerless Battery Mfg. Co.* v. *Hand,* 109 Neb. 696, 698, 192 N.W. 228; *O'Bear-Nester Glass Co.* v. *Antiexplo Co.,* 101 Tex. 431, 435, 108 S.W. 967; see *Diamond State Brewery, Inc.* v. *De La Rigaudiere,* 25 Del. Ch. 257, 264, 17 A.2d

313; 11 Fletcher, op. cit., § 5189. This principle is especially applicable where the process is not patentable and may be used by anyone, or is already known to those in the particular trade in which it is used. *Dean* v. *Baldwin*, 99 Ill. App. 582, 588; *Scully* v. *Automobile Finance Co.*, 11 Del. Ch. 355, 358, 101 A. 908; *Webster* v. *Webster Refining Co.*, 36 Okla. 168, 170, 128 P. 261; see *National Tube Works Co.* v. *Gilfillan*, 46 Hun 248, 252 (N.Y.).

It is to be noted that the corporation, as well as two of its directors, was a party defendant. If, as is claimed, Jordan's offer was worthless, the defendant directors, in behalf of the corporation if not of themselves, were entitled to show that Jordan's promise, unfulfilled, was not, within the terms of the statute, "property" which could be accepted in lieu of cash as payment for a stock subscription. It was a proper defense not only in behalf of the corporation but also in behalf of the individual defendants. For if the corporation was justified in refusing to issue the stock certificate there could be no conversion on the part of the individual defendants. A charge, therefore, to the effect that Jordan's promise as contained in his offer was adequate consideration for the issuance of the stock for which he had subscribed was tantamount to a declaration that the mere promise was "property" within the terms of the statute and was erroneous.

Since a new trial must be ordered and the same and similar questions may arise at that time, we will consider two other errors claimed in the charge. The defendants requested a charge to the effect that an offer to impart information is not consideration when that information turns out to be something widely known and available to anyone. *Masline* v. *New York, N. H. & H. R. Co.*, 95 Conn. 702, 708, 112

A. 639. They also requested a charge, based upon § 5171 of the General Statutes, that if the directors became satisfied that Jordan's subscription was not made in good faith it was their duty to disallow it. The court denied these requests and charged in effect that these claims were not available to the defendants. It apparently took the view that, because the defendants Blake and Swebilius, together with Jordan, had signed the certificate of organization stating in effect that Jordan's offer was worth $30,000 as property in exchange for the stock for which he had subscribed, they could not later make a contrary assertion.

It is true that an incorporator or director is estopped to deny, as against a creditor, statements contained in the certificate of incorporation or organization. *Canfield* v. *Gregory,* 66 Conn. 9, 21, 33 A. 536; *Baldwin* v. *Wolff,* 82 Conn. 559, 562, 74 A. 948. But that is not this case. Here, the corporation and two of its directors are defending against the claim of a third director. Their defense for failure to issue the stock to which this third director had subscribed is that he made misrepresentations as to the value of the property which was to be received for the stock in lieu of cash, that the defendant directors relied upon these misrepresentations and executed the certificate stating the value of the property, that the property was in fact worthless, and that the consideration for the issuance of the stock had failed. This was a legitimate defense. A corporation may refuse to issue stock when the consideration for the subscription therefor has failed. *Baker* v. *Bankers Mortgage Co.,* 15 Del. Ch. 183, 189, 133 A. 698; *Hillside Cemetery Assn.* v. *Holmes,* 97 Minn. 261, 264, 105 N.W. 905; *Coffin* v. *Struthers,* 169 Iowa 313, 320, 151 N.W. 400; see *Ellis*

v. *Penn Beef Co.,* 9 Del. Ch. 213, 218, 80 A. 666; 11 Fletcher, Corporations (Perm. Ed.) §§ 5166, 5175. Nor are the defendants Blake and Swebilius estopped to set up a defense of misrepresentation and bad faith as against Jordan because they signed the certificate, where they have offered to prove that their reliance upon the misrepresentation of Jordan induced them to execute it. *McCaskill* v. *Connecticut Savings Bank,* 60 Conn. 300, 313, 22 A. 568; *Calhoun* v. *Richardson,* 30 Conn. 210, 226; Bigelow, Estoppel (6th Ed.) p. 646; see *Shepaug Voting Trust Cases,* 60 Conn. 553, 575, 24 A. 32.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.