Murray Cowan et al., Plaintiffs, *v.* Maynard De Witt, Defendant.

Supreme Court, Trial Term, Ulster County, January 23, 1954.

*William A. Kaercher* for defendant.

*Philip Korn* for plaintiffs.

ELSWORTH, J. Plaintiffs have recovered a jury verdict in the sum of $5,000 predicated upon an alleged breach of contract. Defendant made a motion at the close of the plaintiffs' case, and which was renewed at the conclusion of all the testimony, to dismiss the complaint and for a directed verdict on the ground that no cause of action was proven as matter of law. Such motion was on each occasion reserved on and is now here considered.

Plaintiffs owned a parcel of land at Kerhonkson in the county of Ulster and desired to develop the same by the construction of homes to be offered for sale. Defendant controlled two private water companies serving the area. It appears that oral conversations took place between the parties and that defendant initially promised to supply water to twelve homes to be built. One home was built and water supplied by defendant. Subsequent oral conversations determined that water was to be supplied to six homes instead of twelve. Defendant, however, refused to furnish such water and the action seeks damages for loss of profits on homes never built because of defendant's refusal to furnish water to them after construction.

The complaint so far as pertinent alleges: "28. That on or about and prior to December 1950 the plaintiffs and the defendant entered into an agreement whereby the defendant agreed to sell, furnish and supply to the plaintiffs water for the prospective homes to be built by the plaintiffs upon the plaintiffs' aforedescribed land. 29. The plaintiffs agreed to pay for the aforesaid water at the prevailing rates then existing in the same area adjacent to and surrounding the property of the plaintiffs. 30. In accordance with the terms of said agreement the defendant was to sell, furnish and supply said water to the plaintiffs for the total number of houses to be built by the plaintiffs as soon as each of said homes was completed or immediately prior thereto."

There is thus alleged a bilateral agreement by which plaintiffs were to buy and defendant to sell water. The implication that plaintiffs were to buy from the express allegation that they were to pay is sufficient as matter of pleading since " A contract

includes not only what the parties said but also what is necessarily to be implied from what they said." (*Grossman* v. *Schenker*, 206 N. Y. 466, 469.) The agreement, however, to buy and sell water was not a simple agreement of that nature but was for " prospective homes " and was to be effective as soon as the same were completed. It was conditioned upon the building of such homes by plaintiffs and whether or not they bound themselves to build the same and then purchase water is a controlling consideration in determining whether a valid bilateral contract was made.

In most cases a promise exchanged for a bargained-for promise is sufficient consideration for a bilateral contract. (*Coleman* v. *Eyre*, 45 N. Y. 38.) " Promises, however, are not always sufficient; they must be of some value, or at least not merely empty formal words, incapable of performance." (*Nassau Supply Co.* v. *Ice Service Co.*, 252 N. Y. 277, 280.) " Mutual promises in each of which the promisor undertakes some act or forbearance that will be, or apparently may be, detrimental to the promisor or beneficial to the promisee, and neither of which is void are sufficient consideration for one another." (1 Williston on Contracts [Rev. ed.], p. 347.) A promise must be, nevertheless, legally binding, since if it is not, there is no legal detriment in making it or legal benefit in receiving it. " The principle is ordinarily stated in the axiom that in a bilateral agreement both promises must be binding or neither is binding." (1 Williston on Contracts [Rev. ed.], p. 345.) An example of the application of this rule is found in *Topken, Loring & Schwartz* v. *Schwartz* (249 N. Y. 206), wherein the court held that since plaintiff and defendant were not both bound by promises, no consideration existed. It must be recognized nonetheless that promises may be legally binding even though they be implied and not express for a situation may be instinct with obligation. (*Wood* v. *Duff-Gordon*, 222 N. Y. 88.)

A leading case on the subject of the nature of the promises indispensably necessary to a firm bilateral contract is *Schlegel Mfg. Co.* v. *Cooper's Glue Factory* (231 N. Y. 459). In that case defendant promised to sell glue to plaintiff, but plaintiff did not obligate itself to buy. It was held that no contract existed since both parties were not mutually bound and the court succinctly stated the rule to be that (p. 462) " Unless both parties to a contract are bound, so that either can sue the other for a breach, neither is bound."

In *Quick* v. *Wheeler* (78 N. Y. 300), the agreement in question was one in writing by which a buyer agreed to pay a certain

price for timber but the seller did not agree to sell and deliver. It was held that no bilateral contract existed and the seller at most was bound only to the extent of a revocable offer. The court said (p. 303) : '' This contract when made was not binding, as it was based upon no consideration. The plaintiff parted with nothing and there was no mutuality. There was not the consideration which mutual promises give a contract. The plaintiff did not bind himself to sell and deliver the tie timber.''

The common law recognizes the mutuality and validity of sales contracts whereby the seller agrees to furnish and the buyer agrees, either expressly or impliedly, to accept and pay for such a quantity of a commodity as will be required or needed in the buyer's business during a specified period of time, where such requirements or needs may be approximately determined. (*Edison Elec. Illuminating Co.* v. *Thacher*, 229 N. Y. 172; *Ehrenworth* v. *Stuhmer & Co.*, 229 N. Y. 210.) On the other hand, such contracts are not valid if the quantity of the commodity or the acceptance of any of the commodity depends upon the mere wish, will, desire, whim or fancy of the buyer. (*Nassau Supply Co.* v. *Ice Service Co.*, 252 N. Y. 277, *supra*; *Schlegel Mfg. Co.* v. *Cooper's Glue Factory*, 231 N. Y. 459, *supra*.)

The applicable law has been summarized as follows: '' A promise by one party to perform an act or series of acts in consideration solely of the performance of another act or series of acts by the other party, the latter being left entirely free to perform or not on his part, is unenforceable for want of a sufficient consideration, and mutuality of obligation must exist at the same time.   *   *   *   The same is true as to a promise by a buyer to purchase if there is no obligation on the part of the seller to sell, or by a seller or vendor to sell if there is no obligation on the part of the buyer or purchaser to buy ''. (1 New York Law of Contracts, § 316, pp. 474, 476.) Illustrations of these rules may be found in *Smith* v. *Diem* (223 App. Div. 572, affd. 249 N. Y. 590); *Dubeshter* v. *Life-Lube Oil Corp.* (264 App. Div. 875, affd. 290 N. Y. 675); *Miskowitz* v. *Starobin* (181 Misc. 445, affd. 267 App. Div. 866), and *Van Slyke News Agency* v. *News Syndicate Co.* (207 App. Div. 736).

In the pleaded contract the plaintiffs did not obligate themselves to purchase any water whatsoever. The agreement on its face was contingent upon plaintiffs building houses. There was no such agreement as would empower defendant to compel plaintiffs first to build houses and then to purchase water. The plaintiffs could have built houses and then secured water from wells of their own or from any other source and defendant

could not have compelled them to use his water. The plaintiffs did not unequivocally agree to buy any water; they could decline to purchase at all; if they commenced buying they could stop at any time. Consequently, no bilateral contract existed between the parties here under the allegations of the complaint.

The proof also fails to establish a bilateral contract. It shows that the plaintiff Murray Cowan went to the defendant in December, 1950, and advised him that he contemplated building ten to twelve homes and asked if he would supply him with water. The defendant replied, " Certainly, we have a sufficient supply of water, we will gladly give it to you." Plaintiffs then contracted for the building of a model house, hired a surveyor and graded the site. On March 1, 1951, plaintiff Murray Cowan and defendant had another conversation in which it was suggested by Cowan that he (Cowan) lay a larger pipeline but defendant said a one-inch pipeline should be laid. On March 28, 1951, a conversation occurred in which the defendant stated that if he hooked up plaintiffs to his private line plaintiffs would have to pay a certain rate, to which plaintiffs agreed. In the next pertinent conversation defendant told plaintiffs that he would not lay any dead pipe. In June, 1951, defendant informed plaintiffs that he would not sell them water. Shortly thereafter defendant modified his complete refusal by promising water for two houses. This summary of the testimony, most favorable to plaintiffs, does not show that the plaintiffs bound themselves in any way by a promise, express or implied, to do anything whatsoever.

Nor do pleadings or the proof point to the existence of a unilateral contract predicated on a promise by defendant to supply water if plaintiffs performed the act of building houses. Even indulging in the assumption that the proof were susceptible of the interpretation that a promise was given for an act, plaintiffs could not prevail here since " It is elementary that any offer to enter into a unilateral contract may be withdrawn before the act requested to be done has been performed." (*Petterson* v. *Pattberg,* 248 N. Y. 86, 88.) " If an act is requested, that very act and no other must be given " (1 Williston on Contracts [Rev. ed.], p. 209). The performance of service in preparation of the act sought does not create a contract. (*Petterson* v. *Pattberg, supra; Ganss* v. *Guffey Petroleum Co.,* 125 App. Div. 760, affd. 198 N. Y. 574; *Sonino* v. *Magrini,* 225 App. Div. 536; *Quincy & Co. Arbitrage Corp.* v. *Cities Service Co.,* 156 Misc. 83, affd. 253 App. Div. 719.)

Since no contract was shown to exist as matter of law, the verdict of the jury is vacated and the defendant's motion for a direction of a verdict and dismissal of the complaint is granted.

Submit order in accordance herewith.