MORRIS LEBOWITZ *v.* MARTIN J. McPIKE ET AL.

KING, C. J., ALCORN, COTTER, THIM and RYAN, Js.

Argued October 2—decided December 10, 1968

*Philip H. Smith,* for the appellants (named defendant et al.).

*John J. Hunt,* for the appellee (plaintiff).

COTTER, J. The plaintiff brought this action for the specific performance of a written agreement primarily concerned with the purchase and sale of corporate stock and, in the alternative, for damages.

The agreement entered into by the plaintiff, Morris Lebowitz, and the individual defendants, Martin J. and Neddy McPike, husband and wife, is printed in the footnote.[1] The court rendered judgment for the plaintiff to recover damages of $26,000, plus interest of 6 percent from May 5, 1964, from the McPikes, and it found in favor of the corporate defendant, the Stratford Laundry Corporation. The court refused to issue a decree of specific performance. The defendants McPike have appealed on the question of damages. The corporation did not take an appeal.

An earlier action between the individual parties to this lawsuit on a note arising out of the agree-

---

[1]                              "AGREEMENT

This Agreement made this 7th day of September, 1960, by MARTIN J. MCPIKE and NEDDY MCPIKE, each of the Town of Cheshire, County of New Haven and State of Connecticut, hereinafter referred to as Buyers and MORRIS LEBOWITZ, of the Town of Fairfield, County of Fairfield and State of Connecticut, hereinafter referred to as Seller

WITNESSETH:

WHEREAS the Buyers are officers and directors, but not stockholders, of Stratford Laundry Corporation, a Connecticut corporation with its principal place of business at 1881 Main Street in the Town of Stratford, and

WHEREAS the Seller is, or will be, the owner of two hundred (200) shares of common stock of the aforesaid corporation, which is all of the stock authorized to be issued by said corporation at this date, and,

WHEREAS the Buyers wish to buy and the Seller wishes to sell the aforesaid stock,

NOW THEREFORE, It is agreed that

The Seller will sell and the Buyers will buy the aforesaid two hundred (200) shares of common stock of Stratford Laundry Corporation for the sum of Twenty Six Thousand ($26,000.00) Dollars on any day prior to, but in no event later than, April 1, 1961. Time is the essence of this Agreement, but the Buyers reserve the right to buy so much of the stock as they may from time to time choose at any day or dates prior to April 1, 1961 and the Seller agrees to turn over one or any number of shares as requested by the Buyers upon

ment discussed herein is reported in 151 Conn. 566, 201 A.2d 469, and the business transactions between the parties leading to the formation and execution of the agreement are described therein.

The finding, which is not subject to correction in any material particular, except so far as it states conclusions not warranted by law and except as hereinafter stated, discloses the following facts: The defendant Martin J. McPike was a General Electric distributor of laundromat appliances and equipment. He found what he believed to be an excellent location for a laundromat and contacted Attorney Ralph Lockwood to find capital to establish a laundromat in Stratford. Lockwood took

payment of $130.00 for each share. This option shall in no way effect [sic] the fact that on April 1, 1961 the Buyers unreservedly agree to buy, or to have bought the aforesaid two hundred (200) shares of common stock.

As part consideration for this Agreement the Seller agrees to vote for the Buyers as officers and directors of this corporation and to permit them to operate the business in such manner as they deem best.

As part consideration for this Agreement the Buyers agree to continue as officers and directors of this corporation and to devote such time to the successful operation of this business as may be necessary.

As part consideration for this agreement the Buyers, agree to save the Seller harmless from any loss, liability or responsibility, he had, may have, or will have as a stockholder of the aforesaid corporation and the Buyers agree to diligently pay the sums due and to buy the stock on the terms and conditions aforesaid.

As part consideration for this agreement the parties agree that no additional stock may be issued by this corporation during the term of this Agreement.

This Agreement shall inure to the benefit of and shall be binding upon the heirs, legal representatives and assigns of the Seller and the Buyers.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals this 7th day of September, 1960.

.... MARTIN J. McPIKE ....
...... NEDDY McPIKE ......
.... MORRIS LEBOWITZ ...."

him to the plaintiff, Morris Lebowitz, to obtain
$20,000 to purchase necessary appliances and equip-
ment for the business at factory prices, Martin
McPike representing that the retail price would be
$26,000, and that within a period of a few months
the business would sell for approximately $40,000.
Later, the plaintiff informed Lockwood that he
would advance $20,000 to Martin McPike and in-
structed him to proceed with the necessary legal
papers and details. Lockwood represented the plain-
tiff, the McPikes and the corporation during the
negotiations.

On September 7, 1960, the plaintiff deposited
$20,000 with a bank in Bridgeport to the account
of the defendant the Stratford Laundry Corpora-
tion, and it was agreed between the plaintiff and
the defendants McPike that the corporation would
obtain a lease of the store in Stratford and that the
funds would be used to establish a laundromat at
that location. Attorney Lockwood was authorized
to act as the agent of the corporation in withdraw-
ing funds from its bank account, according to a copy
of a resolution of the board of directors of the cor-
poration signed and certified by the defendant Mrs.
Neddy McPike. The Stratford Laundry Corpora-
tion used these funds paid to it by the plaintiff to
establish and operate the laundromat business in
Stratford, and the laundromat business was con-
ducted at the store by the corporation.

Attorney Lockwood prepared papers for the
organization of the Stratford Laundry Corporation
and minutes of meetings of incorporators, stock-
holders and directors. The minutes recite the
presence of persons who never appeared at the
alleged meetings of incorporators, stockholders and
directors. Neither the meeting of the incorporators

of the Stratford Laundry Corporation nor the initial meeting of the board of directors was ever held as set forth in the minute book. The certificate of incorporation of the Stratford Laundry Corporation dated September 7, 1960, states that the corporation started business with only $1000 worth of capital stock and that it was authorized to issue only fifty shares of stock at a par value of $100 per share. According to the bylaws of this corporation, there was authorization for only fifty shares of stock, and no additional stock was to be sold without a further vote of the stockholders. The certificate of organization dated the day before, on September 6, 1960, states that the corporation had issued $5000 worth of stock. There was no truth in the statements contained in the certificate of organization and in the certificate of incorporation since no stock had been issued to anyone on September 6, 1960, or on September 7, 1960. Although the defendants McPike and Attorney Lockwood are listed in the certificate of organization as subscribers to the capital stock of the Stratford Laundry Corporation, in fact no such stock was ever issued to them, nor had any money been paid in for such stock by the incorporators. The minute book records a "unanimous vote" by the board of directors of acceptance of a written proposal by the plaintiff to purchase 200 shares of stock of this corporation, but in fact there was no written approval and no vote, and no meeting was ever held. There was never any authorization for the issuance of any stock to the plaintiff, nor was a resolution adopted at a bona fide meeting of the officers, directors or incorporators. The minute book of the Stratford Laundry Corporation recites a stock assignment to the plaintiff of the shares allegedly owned by the incorporators.

The stock assignment is signed only by Attorney Lockwood, who admits that he never owned any stock in this corporation which he could have assigned and that he wrote up, and as corporation secretary signed, minutes of alleged stockholders' and directors' meetings although no such meetings were in fact held. The four stock certificates allegedly issued to the plaintiff on September 8, 1960, each in the amount of fifty shares, were neither authorized nor issued by the corporation. They are not signed or executed by the officers of this corporation, nor do they bear the corporate seal or revenue stamps. There is no executed transfer or assignment from the plaintiff to the defendants McPike on the stock certificates referred to, nor are there any revenue stamps. There was no compliance with either the requirements of the bylaws of the Stratford Laundry Corporation or the statutes of the state of Connecticut, with reference to the issuance or transfer of share certificates. At the time that the plaintiff advanced the $20,000, deposited the money in the corporate account and signed the agreement, he had no stock of the corporation in his possession. Neither at the time that the plaintiff signed the agreement and made the deposit of $20,000 to the corporate account nor at any time thereafter did the plaintiff have any written papers of any kind from the Stratford Laundry Corporation or any commitment of any kind from it. Nor did he ever receive any stock certificates from the corporation. It did not make any difference to the plaintiff whether the Stratford Laundry Corporation had any assets before he made the deposit of $20,000 to its account, and it was not important to him at the time he made the deposit of $20,000 to the corporation's account that

he have a financial statement of the assets of the corporation.

The business was not successful, and Martin McPike was unable to sell it or any interest in it. The Stratford Laundry Corporation is a private corporation, and its capital stock has no market value. The plaintiff brought the present action because he was unable to recover on the promissory note which was in litigation in the action reported in 151 Conn. 566. The plaintiff, inter alia, alleged that he agreed to subscribe to 200 shares of common stock of the corporation.

It is the claim of the plaintiff "that equity and good conscience demand that the defendants McPike be precluded from denying the existence of the corporate defendant and that the plaintiff is a stockholder in it." Although the plaintiff is identified in the agreement as the seller of 200 shares of stock in the corporation, at no time did he hold or procure certificates of ownership of the stock described therein. Lockwood acted as attorney for all the principals to the agreement, as well as for the corporation, with the full knowledge of all concerned, and the unchallenged findings reveal that the parties believed the corporation had been validly formed and organized. Fault for the lack of knowledge, untruths or machinations involved in the transaction cannot be held to fall on one or the other of the parties alone, without other incriminating facts, where the attorney acts for all, since his knowledge was the knowledge of all concerned. Such knowledge is imputed to the clients when, as here, it was acquired in the very business in respect to which he was the attorney. *Sweeney* v. *Pratt,* 70 Conn. 274, 282, 39 A. 182; 7 Am. Jur. 2d, Attorneys at Law, § 107; 7 C.J.S., Attorney and Client, § 69. The

parties would be equally at fault, and the plaintiff is not insulated under the circumstances of the present case from the attorney's knowledge where the attorney acted for all of them. See *Farr* v. *Newman,* 14 N.Y.2d 183, 199 N.E.2d 369; note, 4 A.L.R.3d 224. As found by the court, the parties believed that the corporation had been validly formed and organized, and there was no fraud found or claimed on the part of the individual defendants. The doctrine of equitable estoppel is absent. See *Trotta* v. *Metalmold Corporation,* 139 Conn. 668, 676, 677, 96 A.2d 798. "The modern estoppel *in pais* is of equitable origin, though of equal application in courts of law. It is much more than a rule of evidence. It establishes rights; it determines remedies. An equitable estoppel does not so much shut out the truth as let in the truth, and the whole truth. Its office is not to support some strict rule of law, but to show what equity and good conscience require, under the particular circumstances of the case, irrespective of what might otherwise be the legal rights of the parties." *Canfield* v. *Gregory,* 66 Conn. 9, 17, 33 A. 536. "It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." *State* v. *American News Co.,* 152 Conn. 101, 114, 203 A.2d 296.[2]

---

[2] It is noteworthy that the plaintiff did not give the money to the McPikes but deposited the $20,000 with the corporation, and the McPikes were not authorized to withdraw funds from the bank account. Only Attorney Lockwood was authorized to do so. In this connection, it should be noted that at the trial the plaintiff testified as follows: "Q. We are talking now in September, when you made the deposit on September 7th, '60. That is when you put your $20,000 in the bank? A. That is correct. Q. Now, I am

It is interesting to note that the plaintiff, inter alia, alleged that he agreed to subscribe to 200 shares of common stock of the corporation and also that, during the course of the trial, he made the following claim: "He [the plaintiff] was buying the stock as an original issue of this corporation that was formed. He was the original subscriber." This court has held that "failure to form the projected company . . . and a refusal or failure to issue the stock subscribed for or inability to issue it, will constitute a failure of consideration" which "would be a complete legal defense to an action on the contract itself." *Cramer* v. *Burnham,* 107 Conn. 216, 222, 223, 140 A. 477. Although the court therein referred to an original agreement with the corporation, the same result would occur in connection with the attempted enforcement of a contract between the individuals herein. The subject matter is nonexistent for all purposes. A fortiori, if there is a failure of consideration because of the nonissuance of the stock under such an agreement with a corporation, the stock is nonexistent for the purposes of seeking a recovery on a contract between the individuals as entered into herein. Moreover, we

---

asking you now whether you presently—apart from what you might have said before—do you now recall who was to have control of that money? A. Yes, I do. . . . Q. Go ahead, please explain it. A. When we went down to the bank—this was back in September, about the 7th of September—Mr. Lockwood had told me that he would be director and controlling the checkbook, that he would sign all the checks, and I had forgotten about that at this point. Q. But you remember it now? A. Now I remember it. That was to protect the $20,000 that was deposited there. . . . Q. You testified at the end of your examination by Mr. Hunt that since yesterday when you testified and since earlier this morning you now remember that Mr. Lockwood was to have exclusive control of the spending of the $20,000 that had been put to the corporate account, is that correct? A. That's right."

have already held in a former trial involving this stock that, since "the stock was neither authorized nor issued, it could not constitute a valid consideration." *Lebowitz* v. *McPike,* 151 Conn. 566, 572, 201 A.2d 469. Since it was neither authorized nor issued it did not have a valid existence; *Fairfield County National Bank* v. *Hammer,* 89 Conn. 592, 597, 95 A. 31; and could not be consideration for the contract between the plaintiff and the McPikes. The nonexistence of the stock was a valid excuse making the contract unenforceable since it was a substantial part of the contract and went to the root of it. See *Neely* v. *White,* 177 Va. 358, 366, 367, 14 S.E.2d 337.

The court found, inter alia, that the Stratford Laundry Corporation and the defendants McPike were ready and willing to issue or cause to be issued to the plaintiff the certificates of stock. This finding was not challenged by the plaintiff in his assignment of errors. There was a finding by the court that Attorney Lockwood requested the McPikes to come to his office to sign the stock certificates but that they never did so. The certificates Lockwood asked them to sign were four in number for fifty shares each, and the legend appeared on each certificate that the capital stock of the corporation was $50,000, which was untrue. The machinations related above in this opinion clearly indicate that the transactions in connection with the corporation and the proposed certificates amounted to a sham to which the plaintiff was in pari delicto through his attorney. The court further found that the plaintiff "learned that these stock certificates were held invalid by the Connecticut Supreme Court and he agreed that in the present action he was making no claim that these certificates were valid stock certificates." The court did not specifically find why the McPikes refused to

go to Lockwood's office and sign the certificates. The law, however, does not require the performance of a useless act.

Mutual promises must be capable of performance, and the performance of a promise must be possible. Under the present unchallenged facts, the mutual promises were incapable and impossible of performance. *Nassau Supply Co.* v. *Ice Service Co.*, 252 N.Y. 277, 280, 281, 283, 169 N.E. 383; *Washington Chocolate Co.* v. *Canterbury Candy Makers, Inc.*, 18 Wash. 2d 79, 87, 138 P.2d 195; 17 Am. Jur. 2d, Contracts, § 106.[3]

It is unnecessary to consider the other questions raised in view of our conclusion, which is dispositive of this appeal.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendants Martin J. and Neddy McPike.

In this opinion THIM, J., concurred.

ALCORN, J. (concurring in the result). I concur in the result reached, but I do not think that the agreement in issue should be treated as a stock subscription agreement. 4 Fletcher, Corporations (Perm. Ed.) § 1365. I am further of the opinion that the result should be based on the circumstance that there was no evidence offered of an agreement, enforceable under the Statute of Frauds, by virtue

---

[3] The present case is distinguishable from cases claiming restitution in which the plaintiff seeks to recover money back from the donee, herein the corporation, on a contract the consideration of which has failed. See cases such as *City of Louisiana* v. *Wood*, 102 U.S. 294, 299, 26 L. Ed. 153; *Vincenzo* v. *Richwood Banking & Trust Co.*, 93 W. Va. 368, 374, 117 S.E. 882; see also 17 Am. Jur. 2d, Contracts, § 399. It is also distinguishable from a cause of action for unjust enrichment, such as *Schleicher* v. *Schleicher*, 120 Conn. 528, 534, 182 A. 162, or *Franks* v. *Lockwood*, 146 Conn. 273, 278, 150 A.2d 215.

of which the plaintiff could acquire the stock which, under the terms of the agreement in issue here, he undertook to sell to the defendants. General Statutes § 52-551;[1] *DeNunzio* v. *DeNunzio,* 90 Conn. 342, 345, 97 A. 323.

The trial court found that the corporation and the McPikes "acknowledged" that the plaintiff was entitled to have 200 shares of stock issued to him and that they were ready and willing to issue the stock or cause it to be issued. The form of this acknowledgment does not appear. The trial court also found that, although Lockwood several times asked the McPikes to come to his office to sign the certificates as officers of the corporation, they did not do so and that the plaintiff has never received the shares. The trial court then concluded that the failure of the McPikes to issue the stock or to cause it to be issued was a breach of the contract on which the plaintiff seeks to recover in the present action. In the contract sued on, however, the only reference to the plaintiff's ownership or acquisition of the stock is in one of the preambles which recites that the plaintiff "is, or will be, the owner." There is, in that contract, no undertaking by the McPikes to have the stock transferred to the plaintiff. Another preamble recites that the McPikes themselves own none of the stock of the corporation. Quite obviously, there were other dealings between the parties. The trial court has found that the plaintiff told his attorney that he had decided to advance $20,000 to Martin J. McPike and instructed the attorney "to proceed with the necessary legal papers and de-

[1] The statute was repealed by Public Acts 1959, No. 133 § 10-102, effective, as stated in § 10-101, on October 1, 1961, which was subsequent to this transaction. See Uniform Commercial Code §§ 42a-1-206, 42a-8-319, 42a-10-102(1).

tails." Whether the attorney carried out those instructions in a manner sufficient to furnish the plaintiff a basis for relief against the McPikes when they failed to sign the certificates nowhere appears. The corporation is not a party to the contract sued on, and the trial court has found that, when that contract was made, and thereafter, the plaintiff had no commitment, in writing or otherwise, from the corporation. On this record, therefore, the plaintiff should not recover for the reason that he failed to show that he was able to perform his part of the agreement in issue.

RYAN, J. (dissenting). I am unable to agree with the holding of the majority opinion that, since the stock was neither authorized nor issued and hence never had a valid existence, this constituted a failure of consideration which rendered the agreement unenforceable. The trial court concluded that the defendants McPike were officers and directors of the corporation and had it in their power to issue, or cause to be issued, valid certificates for the 200 shares of stock due the plaintiff and that their failure to issue the stock to the plaintiff was a breach of their agreement which entitled the plaintiff to damages. While the court in one paragraph of its finding found that the defendants McPike acknowledged that the plaintiff was entitled to have issued to him certificates representing 200 shares of stock and that they claimed they were at all times ready, willing and able to issue or cause to be issued to the plaintiff certificates for such stock, the court made an affirmative finding that the defendants McPike were requested by Attorney Lockwood on several occasions to come to his office for the purpose of signing the stock certificates as officers of the corpo-

ration and that, although they had agreed to do so, they never had signed the certificates and the plaintiff never had received the stock. The conclusions of the trial court are supported by the subordinate facts. The stock was nonexistent because the defendants McPike, upon finding the venture unprofitable, refused to issue it. To hold that under such circumstances there was a failure of consideration which rendered the contract unenforceable is to reward the McPikes for violation of their contract and to penalize the plaintiff for their refusal to perform.

The judgment of the trial court should be affirmed.

In this opinion KING, C. J., concurred.